RONALD S. KRAVITZ (SBN 129704)
KOLIN C. TANG (SBN 279834)
SHEPHERD, FINKELMAN, MILLER & SHAH, LLP
201 Filbert Street, Suite 201
San Francisco, CA 94133
Telephone: (415) 429-5272
Facsimile: (866) 300-7367
Email: rkravitz@sfmslaw.com
          ktang@sfmslaw.com

*Attorneys for Plaintiff and the Proposed Class*

[Additional Counsel Listed on Signature Page]

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW WEHNER, Individually and as a representative of a class of similarly situated persons, on behalf of the U.S. ROCHE 401(K) SAVINGS PLAN, <br><br> Plaintiff, <br> v. <br><br> GENENTECH, INC., the U.S. ROCHE DC FIDUCIARY COMMITTEE and DOES No. 1-10, Whose Names Are Currently Unknown, <br><br> Defendants. | CASE NO.   3:20-cv-06894 <br><br> **CLASS ACTION COMPLAINT** <br><br> JURY TRIAL DEMANDED |

## I.   INTRODUCTION

1.     Plaintiff, Matthew Wehner ("Plaintiff"), individually in his capacity as a participating employee of the U.S. Roche 401(k) Savings Plan ("Plan"), brings this action under 29 U.S.C. § 1132, on behalf of the Plan and a class of similarly-situated participating employees, against Defendants, Genentech, Inc. ("Genentech"), the U.S. Roche DC Fiduciary Committee ("Administrative Committee"), and Does No. 1-10, who are members of the Administrative Committee or other fiduciaries of the Plan and whose names are currently unknown (collectively, "Defendants"), for breach of their fiduciary duties under the Employee Retirement Income

CLASS ACTION COMPLAINT

Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and related breaches of applicable law beginning six years from the date this action is filed and continuing to the date of judgment (the "Class Period").

2.      Defined contribution plans that are qualified as tax-deferred vehicles have become the primary form of retirement savings in the United States and, as a result, America's *de facto* retirement system.  Unlike traditional defined benefit retirement plans, in which the employer typically promises a calculable benefit and assumes the risk with respect to high fees or under-performance of pension plan assets used to fund defined benefits, 401(k) plans operate in a manner in which participants bear the risk of high fees and investment underperformance.

3.      The importance of defined contribution plans to the United States retirement system has become pronounced as employer-provided defined benefit plans have become increasingly rare as an offered and meaningful employee benefit.

4.      As of December 31, 2018, the Plan had 33,693 participants with account balances and assets totaling over $7.6 billion, placing it in the top 0.1% of defined contribution plans by plan size.  Defined contribution plans with substantial assets, like the Plan, have significant bargaining power and the ability to demand low-cost administrative and investment management services within the marketplace for administration of defined contribution plans and the investment of defined contribution assets.  The marketplace for defined contribution retirement plan services is well-established and can be competitive when fiduciaries of defined contribution retirement plans act in an informed and prudent fashion.

5.      Defendants maintain the Plan and are responsible for selecting, monitoring, and retaining the service provider(s) that provide investment, recordkeeping, and other administrative services.  Defendants are fiduciaries under ERISA, and, as such, are obligated to (a) act for the exclusive benefit of participants, (b) ensure that the investment options offered through the Plan are prudent and diverse, and (c) ensure that Plan expenses are fair and reasonable.

CLASS ACTION COMPLAINT

6.      Defendants have breached their fiduciary duties to the Plan and, as detailed below, have: (1) allowed unreasonable recordkeeping/administrative expenses to be charged to the Plan; and (2) selected, retained, and/or otherwise ratified high-cost and poorly-performing investments, instead of offering more prudent alternative investments when such prudent investments were readily available at the time that they were chosen for inclusion within the Plan and throughout the Class Period (defined below).

7.      To remedy these fiduciary breaches and other violations of ERISA, Plaintiff brings this action under ERISA Sections 404, 409 and 502, 29 U.S.C. §§ 1104, 1109 and 1132, to recover and obtain all losses resulting from each breach of fiduciary duty.  In addition, Plaintiff seeks such other equitable or remedial relief for the Plan and the proposed class defined below (the "Class") as the Court may deem appropriate and just under all of the circumstances.

8.      Plaintiff specifically seeks the following relief:

a.      A declaratory judgment holding that the acts of Defendants described herein violate ERISA and applicable law;

b.      A permanent injunction against Defendants prohibiting the practices described herein and affirmatively requiring them to act in the best interests of the Plan and its participants;

c.      Equitable, legal or remedial relief for all losses and/or compensatory damages;

d.      Attorneys' fees, costs and other recoverable expenses of litigation; and

e.      Such other and additional legal or equitable relief that the Court deems appropriate and just under all of the circumstances.

## II.      THE PARTIES

9.      Plaintiff is a former employee of Genentech and is a current participant in the Plan under 29 U.S.C. § 1002(7).  Plaintiff is a resident of Bothell, WA.

10.     Genentech is a Delaware domestic corporation headquartered in San Francisco, CA.  As a member of the Roche Group, one of the largest pharmaceutical companies in the world, Genentech combines science, technology, and research to create medicines.

11.     The Administrative Committee is the Plan administrator and is a fiduciary under ERISA pursuant to 29 U.S.C. §§ 1002 and 1102.  The Administrative Committee maintains its address at Genentech's corporate headquarters in San Francisco, CA.  The Administrative Committee and its members are appointed by Genentech to administer the Plan on Genentech's behalf.

12.     Does No. 1-10 are the members of the Administrative Committee and, by virtue of their membership, fiduciaries of the Plan or otherwise are fiduciaries to the Plan.  Plaintiff is currently unable to determine the membership of the Administrative Committee or the identity of the other fiduciaries of the Plan because, despite reasonable and diligent efforts, it appears that the membership of the Administrative Committee and the identity of any other fiduciaries is not publicly available.  As such, these defendants are named Does 1-10 as placeholders.  Plaintiff will move, pursuant to Rule 15 of the Federal Rules of Civil Procedure, to amend this Complaint to name the members of the Administrative Committee and other responsible individuals as defendants as soon as their identities are discovered.

## III.     JURISDICTION AND VENUE

13.     Plaintiff seeks relief on behalf of the Plan pursuant to ERISA's civil enforcement remedies with respect to fiduciaries and other interested parties and, specifically, under 29 U.S.C. § 1109 and 29 U.S.C. § 1132.

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

15.      Venue is proper in this District pursuant to ERISA Section 502(e), 29 U.S.C. § 1332(e), and 28 U.S.C. § 1391 because Genentech's principal place of business is in this District

and the Plan is administered from this District.  Furthermore, a substantial part of the acts and omissions giving rise to the claims asserted herein occurred in this District.

16.     Plaintiff has standing to bring this action.  ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2), authorizes any participant, fiduciary or the Secretary of Labor to bring suit as a representative of a plan, with any recovery necessarily flowing to a plan.  As explained herein, the Plan has suffered millions of dollars in losses resulting from Defendants' fiduciary breaches and remains vulnerable to continuing harm, all redressable by this Court.  In addition, although standing under ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2), is established by these Plan-wide injuries, Plaintiff and all Plan participants suffered financial harm as a result of the Plan's imprudent investment options and excessive fees, and were deprived of the opportunity to invest in prudent options with reasonable fees, among other injuries.

## IV.     FACTUAL ALLEGATIONS

### A.     Background And Plan Structure

17.     The Plan is a single-employer 401(k) plan, in which participants direct the investment of their contributions into various investment options offered by the Plan.  Each participant's account is credited with the participant contributions, employer matching contributions, any discretionary contributions, and earnings or losses thereon.  The Plan pays Plan expenses from Plan assets, and substantially all administrative expenses are paid by participants as a reduction of investment income.  Each participant's account is charged with the amount of distributions taken and an allocation of administrative expenses.  The available investment options for participants of the Plan include various custom investment funds and a self-directed brokerage account.

18.     The Plan's investment alternatives are custom options that are designed by the Administrative Committee solely for investment by participants in the Plan and other

Roche/Genentech 401(k) plans.  The custom investment funds are not mutual funds and, accordingly, are not regulated by the Securities and Exchange Commission ("SEC").

19.    Fidelity Workplace Services LLC ("Fidelity"), which Defendants engaged, was the recordkeeper for the Plan throughout the Class Period.  As the recordkeeper, Fidelity is responsible for maintaining records with respect to employees' accounts in the Plan, effecting participant Plan investment elections, and performing administrative functions such as processing loan and withdrawal requests.

20.    During the Class Period, Plan assets were held in trust by the primary custodian of the Plan, State Street Corporation.  All investments and asset allocations are performed through this trust fund.

**B.    Defendants' Breaches of Fiduciary Duties**

21.    As discussed in detail below, Defendants have severely breached their fiduciary duties of prudence and/or loyalty to the Plan.  Plaintiff did not acquire actual knowledge regarding Defendants' breaches at issue here until shortly before this Complaint was filed.

### 1.    The Plan's Excessive Recordkeeping/Administrative Costs

22.    An obvious indicator of Defendants' breach of their fiduciary duties is the Plan's excessive recordkeeping and administrative costs.  According to one industry publication,[1] the average cost for recordkeeping and administration in 2017 for plans much smaller than the Plan (plans with 100 participants and $5 million in assets) was $35 per participant.[2]  As of December 31, 2018, the Plan had more than $7.6 billion in assets and 33,693 participants.  Given its size, and resulting negotiating power, with prudent management and administration, the Plan should

---

[1]The 401k Averages Book (20th ed.).
[2]Other courts have acknowledged that a plan with $3.4 billion in assets and 41,863 active participants should be paying $30 per participant (*Cassell v. Vanderbilt Univ.*, 285 F. Supp. 3d 1056, 1064 (M.D. Tenn. 2018)) and that the "market rate" of total administrative fees for "jumbo" plans, *i.e.*, those within the top 1%, should be $35 per participant (*Sacerdote v. New York Univ.*, No. 16-CV-6284 (KBF), 2017 WL 3701482, at *9 (S.D.N.Y. Aug. 25, 2017)).

CLASS ACTION COMPLAINT

have unquestionably been able to obtain recordkeeping and administrative services for significantly lower than $35 per participant.

23.     In addition to recordkeeping fees paid to Fidelity (and in 2015, to Means and Associates as well), the Plan also paid annual administrative fees to two separate investment consultants and an auditor.  These fees added up to significant costs far above what the Plan should have reasonably been paying.  Despite the size and negotiating power of the Plan, the per-participant fees for recordkeeping and administrative costs were the following excessive amounts during the pertinent period:

| Year | Per-Participant Administrative Fee |
|------|-----------------------------------|
| 2014 | $78.29 |
| 2015 | $76.35 |
| 2016 | $85.29 |
| 2017 | $60.88 |
| 2018 | $57.91 |

24.     As the most significant component of the Plan's administrative fee burden, since at least the second quarter of 2017, participants have paid a flat annual recordkeeping fee of $38 per participant.  That figure was likely considerably higher from 2014 through 2016 given the amount of direct compensation the Plan remitted to Fidelity in those years, as reported in the Plan's Form 5500s.[3]  Even at $38 per participant, the Plan compensated Fidelity at a level far in excess of the $14-$21 per-participant figure that Fidelity itself admitted its recordkeeping services were worth.[4]  Thus, Defendants clearly engaged in a shocking breach of fiduciary duty

---

[3]The Form 5500 is the annual report that defined contribution plans are required to file pursuant to the reporting requirements of ERISA.
[4]*Moitoso v. FMR LLC*, No. 18-CV-12122 (WGY), 2020 WL 1495938, at *15 (D. Mass. Mar. 27, 2020).

CLASS ACTION COMPLAINT

by allowing the Plan to pay at least 81% to 171% more than it should have paid for such services if they had engaged in any modestly prudent approach to ensuring that the Plan's recordkeeping expenses were fair and reasonable.

25.     As such, it is clear that Defendants either engaged in virtually no examination, comparison, or benchmarking of the recordkeeping/administrative fees of the Plan to those of other similarly sized defined contribution plans, or were complicit in paying grossly excessive fees.  Had Defendants conducted any examination, comparison, or benchmarking, Defendants would have known that the Plan was compensating Fidelity and the other service providers at levels inappropriate for its size and scale.  Plan participants bear this excessive fee burden and, accordingly, achieve considerably lower retirement savings since the excessive fees, particularly when compounded, have a damaging impact upon the returns attained by participant retirement savings.

26.     By failing to recognize that the Plan and its participants were being charged much higher fees than they should have been and/or failing to take effective remedial actions, Defendants breached their fiduciary duties to the Plan.

**2.     The Plan's Excessive Total Plan Cost**

27.     In another obvious breach of their fiduciary duties, Defendants also failed to monitor the average expense ratios charged to similarly sized plans for investment management fees, which together with the Plan's recordkeeping and administrative costs renders the Plan's Total Plan Cost ("TPC")[5] significantly above the market average for similarly sized and situated defined contribution plans.  Indeed, participants were offered an exceedingly expensive menu of investment options, clearly demonstrating that Defendants neglected to benchmark the cost of

---

[5] TPC refers to the sum of all fees and expenses associated with the operation of a retirement plan; notably, the recordkeeping fees, any other administrative fees, and investment management fees. The TPC permits a straight "apples-to-apples" comparison of the total fees incurred by different plans, as service providers can and do manipulate price reporting by shifting or redirecting their fees to investment management expenses to minimize the billing for recordkeeping and other service components, and vice versa.

CLASS ACTION COMPLAINT

the Plan lineup or consider other ways in which to lessen the fee burden on participants during the pertinent period.  From 2014 through 2018, the Plan paid out investment management fees of 0.31%-0.32% of its total assets, a figure higher than that of comparable plans.  Indeed, according to the most recent Brightscope/ICI study published in August 2020, the average TPC is 0.28%[6] for plans with over $1 billion in assets, with investment management fees comprising just one component of the TPC.  That the investment management fees for the Plan alone have been greater than the average TPC (inclusive of all plan fees), coupled with the fact that the Plan is much larger than many of the other plans in its Brightscope/ICI category (over $1 billion in assets) from which the average is calculated, confirms the plain fact that Defendants failed to ensure that the Plan was paying reasonable fees and committed an apparent and significant breach of their fiduciary duties by failing to ensure that the Plan only paid reasonable investment management fees.  And, with the excessive $57-$85 per-participant administrative fees, the total cost to the Plan was even more expensive.

28.     The Plan's TPC during the relevant period ranges between 0.34% and 0.36% of net assets.  Indeed, at all times, the Plan's TPC was 6-8 basis points higher than that which Defendants should have reasonably accepted or negotiated for under any circumstances and caused the Plan to incur an overpayment of approximately $21.9 million in fees from 2014 to 2018.  Defendants' failure to ensure that the Plan paid reasonable and appropriate expenses in terms of TPC represents a profound breach of fiduciary duty based upon any objective evaluation of Defendants' conduct.

### 3.     The Plan's Objectively Imprudent Investment Options

---

[6]This figure is for 2016. Given technological advances and market-based competitive pressures since 2016, the average TPC should be even lower today.

CLASS ACTION COMPLAINT

29.     Several of the Plan's investment options are objectively imprudent, separate and apart from the apparent excesses with respect to the Plan's recordkeeping and administrative fees, as well as its relationship with Fidelity, which the Plan entered into at Defendants' behest.

i.      The Roche Target Date Funds

30.     Among other investments, the Plan lineup offers a suite of nine custom target date funds ("Roche TDFs").  The Roche TDFs are designed by the Administrative Committee for the exclusive investment of Roche/Genentech plan participants.  A target date fund is an investment vehicle that offers an all-in-one retirement solution through a portfolio of underlying funds that gradually shifts to become more conservative as the assumed target retirement year approaches. Target date funds offer investors dynamic, easy asset allocation, while providing both long-term growth and capital preservation.  Defendants were responsible for crafting the Plan lineup and could have chosen any target date fund family but elected to create the Roche TDFs instead, an imprudent decision that has cost Plan participants significant growth in their retirement assets. The Roche TDFs are both significantly more expensive and worse performing than many of the mutual fund alternatives offered by target date fund providers.  Given the relative superiority of alternative target date fund suites, in creating and retaining the Roche TDFs, Defendants clearly failed to carry out their responsibilities in a single-minded manner with an eye focused solely on the interests of the participants.  Had Defendants acted in the sole interest of Plan participants by, for example, simply weighing the benefits of the Roche TDFs against target date fund suites offered by Vanguard and Fidelity (the two most widely-utilized target date fund providers), Defendants would have come to the conclusion that the Roche TDFs represented the clearly inferior option and were therefore an inappropriate addition to the Plan lineup.

31.     Exacerbating Defendants' imprudent choice to add and retain the Roche TDFs is the suite's role as the Plan's Qualified Default Investment Alternative ("QDIA") for as long as it has been an option in the Plan investment menu.  A retirement plan can designate one of the

investment offerings from its lineup as a QDIA to aid participants who lack the knowledge or confidence to make investment elections for their retirement assets; if participants do not direct where their assets should be invested, all contributions are automatically invested in the QDIA. Plan fiduciaries are responsible for the prudent selection and monitoring of an appropriate QDIA. The Roche TDF with the target year that is closest to a participant's assumed retirement age (age 65) has served as the QDIA in the Plan throughout the pertinent period.

32.    Given the vast majority of plan participants in general, of which the Plan participants are no exception, are not sophisticated investors, they largely, by default, concentrate their retirement assets in target date funds.  As such, the impact of Defendants' imprudent selection of target date funds is magnified vis-à-vis other asset categories. Indeed, throughout the Class Period, approximately 63%-67% of the Plan's assets were invested in the Roche TDFs.

33.    Measured against appropriate, available alternative target date suites, such as the Vanguard Target Retirement Funds ("Vanguard TDFs") or the Fidelity Freedom Index Funds ("Fidelity TDFs"), the Roche TDFs are a clearly inferior retirement solution.  Both the Vanguard and Fidelity offerings are considerably cheaper than the Roche TDFs, and each has realized substantially greater returns than the Plan's option.  Accordingly, the Plan's investment in the Roche TDFs has resulted in participants missing out on millions of dollars in retirement savings growth that could have been achieved through an investment in either of the proposed alternative suites.

34.    Even a minor increase in an investment's expense ratio (the total annual cost to an investor, expressed as a percentage of assets) can considerably reduce long-term retirement savings.  Despite the Roche TDFs' status as custom investments, for which the Administrative Committee sets the expense ratios, the fees charged by the Roche TDFs are many multiples

higher than those of the Investor share class of the Vanguard TDFs[7] and the industry-leading low

costs of the Institutional Premium share class of the Fidelity TDFs.

| Roche v Vanguard Cost Comparison | | | | |
|---|---|---|---|---|
| Roche TDF | Exp Rat | Vanguard Target Retirement | Exp Rat | Difference |
| Retirement | 0.30% | Income Inv | 0.12% | -0.18% |
| 2020 | 0.30% | 2020 Inv | 0.13% | -0.17% |
| 2025 | 0.31% | 2025 Inv | 0.13% | -0.18% |
| 2030 | 0.32% | 2030 Inv | 0.14% | -0.18% |
| 2035 | 0.34% | 2035 Inv | 0.14% | -0.20% |
| 2040 | 0.36% | 2040 Inv | 0.14% | -0.22% |
| 2045 | 0.38% | 2045 Inv | 0.15% | -0.23% |
| 2050 | 0.38% | 2050 Inv | 0.15% | -0.23% |
| 2055 | 0.38% | 2055 Inv | 0.15% | -0.23% |

| Roche v Fidelity Cost Comparison | | | | |
|---|---|---|---|---|
| Roche TDF | Exp Rat | Fidelity Freedom Index | Exp Rat | Difference |
| Retirement | 0.30% | Income Inst Prem | 0.08% | -0.22% |
| 2020 | 0.30% | 2020 Inst Prem | 0.08% | -0.22% |
| 2025 | 0.31% | 2025 Inst Prem | 0.08% | -0.23% |
| 2030 | 0.32% | 2030 Inst Prem | 0.08% | -0.24% |
| 2035 | 0.34% | 2035 Inst Prem | 0.08% | -0.26% |
| 2040 | 0.36% | 2040 Inst Prem | 0.08% | -0.28% |
| 2045 | 0.38% | 2045 Inst Prem | 0.08% | -0.30% |
| 2050 | 0.38% | 2050 Inst Prem | 0.08% | -0.30% |
| 2055 | 0.38% | 2055 Inst Prem | 0.08% | -0.30% |

35.     The highest expense ratio, charged by the 2045 through 2055 Roche TDFs,

represents an annual cost to investors that is over 2.5 times higher than what shareholders of the

corresponding Vanguard TDF pay and nearly five times higher than what the corresponding

Fidelity TDF costs.  The impact of such high fees on participant balances is aggravated by the

effects of compounding, to the significant detriment of participants over time.  This effect is

illustrated by the below chart, published by the SEC, showing the 20-year impact on a balance of

---

[7]Vanguard also offers the Institutional Target Retirement Fund suite, which charges a mere 9 basis points (0.09%) across every target year.  This target date offering is both a cheaper and better-performing alternative to the Vanguard TDFs, but is not featured in the charts above due to its comparative lack of performance history (the suite's inception date is June 26, 2015).

$100,000 by fees of 25 basis points (0.25%), 50 basis points (0.50%), and 100 basis points (1.00%).



36.     Higher fees significantly reduce retirement account balances over time. Considering just the gap in expense ratios from the Plan's investment in Roche TDFs to the two proposed alternatives, in 2018 alone, the Plan could have saved approximately $9.3 million in costs by investing in the Investor share class of the Vanguard TDFs and approximately $12 million with the Institutional Premium share class of the Fidelity TDFs.

37.     The Roche TDFs fail to compensate for their significant costs with superior performance.  Indeed, by the data points available to Plaintiff through Plan literature, the returns of the Roche TDFs have fallen far short of those produced by both the Vanguard TDFs and the Fidelity TDFs on a trailing three-[8] and five-year annualized basis, virtually across the board.

| | 5-Year Performance as of Q4 2019 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Income | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
| Roche | 4.84% | 5.02% | 5.48% | 6.00% | 6.58% | 7.45% | 7.66% | 7.66% | 7.66% |
| Vanguard | 4.80% | 6.42% | 6.99% | 7.41% | 7.81% | 8.20% | 8.41% | 8.41% | 8.38% |
| Fidelity | 3.93% | 6.59% | 7.02% | 7.91% | 8.65% | 8.77% | 8.78% | 8.77% | 8.77% |

---

[8] No three-year trailing returns are provided for the fourth quarter of 2019 in Plan materials available to Plaintiff.





### 5-Year Performance as of Q4 2019

_(bar chart: Roche, Vanguard, Fidelity across Income, 2020, 2025, 2030, 2035, 2040, 2045, 2050, 2055)_

### 3-Year Performance as of Q2 2020

|  | Income | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|---|
| **Roche** | 5.46% | 5.55% | 5.32% | 5.22% | 5.08% | 4.99% | 4.44% | 4.47% | 4.49% |
| **Vanguard** | 5.39% | 6.09% | 6.33% | 6.42% | 6.45% | 6.50% | 6.41% | 6.42% | 6.40% |
| **Fidelity** | 5.36% | 6.68% | 6.87% | 7.28% | 7.32% | 7.14% | 7.14% | 7.15% | 7.13% |

### 3-Year Performance as of Q2 2020

_(bar chart: Roche, Vanguard, Fidelity across Income, 2020, 2025, 2030, 2035, 2040, 2045, 2050, 2055)_

### 5-Year Performance as of Q2 2020

|  | Income | 2020 | 2025 | 2030 | 2035 | 2040 | 2045 | 2050 | 2055 |
|---|---|---|---|---|---|---|---|---|---|
| **Roche** | 4.90% | 5.04% | 5.05% | 5.13% | 5.18% | 5.60% | 5.32% | 5.34% | 5.36% |
| **Vanguard** | 4.93% | 5.96% | 6.29% | 6.47% | 6.62% | 6.76% | 6.79% | 6.79% | 6.77% |
| **Fidelity** | 4.45% | 6.23% | 6.48% | 7.06% | 7.35% | 7.25% | 7.25% | 7.26% | 7.24% |

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9



10      38.     The retirement savings of Plan participants would be significantly better off

11  invested in either the Vanguard TDFs or the Fidelity TDFs, or any of the several other superior,

12  available alternative target date suites.  Defendants' failure to consider alternative target date

13  offerings, and selection and retention of the Roche TDFs, represents a severe breach of fiduciary

14  duty.

15

16                      ii.     <u>Roche U.S. Small and Mid-Cap Equity Fund</u>

17      39.     It is a basic principle of investment theory that the risks associated with an

18  investment must first be justified by its potential returns for that investment to be rational.  This

19  principle applies even before considering the purpose of the investment and the needs of the

20  investor, such as the retirement assets here.  The Capital Asset Pricing Model ("CAPM"), which

21  is used for pricing securities and generating expected returns for assets given the risk of those

22

23  assets and the cost of capital, provides a mathematical formula distilling this principle:

24          $ER_i = R_f + \beta_i(ER_m - R_f)$, where:

25          $ER_i$=expected return of investment
26          $R_f$=risk-free rate
            $\beta_i$=beta of the investment
27          $(ER_m - R_f)$=market risk premium

28

CLASS ACTION COMPLAINT

Applied here and put simply, the $\beta i$ is the risk associated with an actively-managed mutual fund, which can only be justified if the $ERi$ of the investment option is, at the very least, above that of its benchmark, $Rf$.[9]  Otherwise, the model collapses, and it would be imprudent to assume any risk without achieving an associated return above the benchmark returns.

40.     The Roche U.S. Small and Mid-Cap Equity Fund is a custom investment option designed by the Administrative Committee for the exclusive investment of Roche/Genentech plan participants.  The Fund has failed to demonstrate an ability to beat its benchmark, the Russell 2000 Index, over a five-year period.  At the end of the fourth quarter of 2019, the Fund's trailing five-year annualized returns lagged those of the benchmark by 11 basis points (0.11%).  By the end of the second quarter of 2020, this gap had grown: the Fund's five-year annualized performance trailed the benchmark by 21 basis points (0.21%).  As discussed above, active managers face an uphill battle to provide value by consistently beating their benchmarks with the additional obstacle of high fees, compared to those funds that simply track the benchmark.  Given the presence in the Plan lineup of an index fund that already tracks the Russell 2000 Index, there was and is no reason to include an actively managed fund in the U.S. small/mid-cap space.  Defendants' misguided decision to create and retain the Fund was exacerbated by its inability to provide participants sufficient value to justify its 68 basis point (0.68%) expense ratio.  In contrast, the Plan's index option that tracks the Russell 2000 Index, the BlackRock U.S. Small Cap Equity Index Fund, charges a measly 2 basis points (0.02%).  Indeed, it was a severe breach of fiduciary duty for Defendants to retain an investment option that, for 34 times the cost of an alternative fund in the same category, failed to produce returns to match, much less exceed, the alternative.

---

[9] In this instance, the index benchmark takes the place of the "risk-free" rate, as the investment option is measured against the performance of that investment category, rather than the typical U.S. Treasury Bonds or equivalent government security in a general CAPM calculation.

## V.    **ERISA'S FIDUCIARY STANDARDS**

41.    ERISA imposes strict fiduciary duties of loyalty and prudence upon Defendants as fiduciaries of the Plan. 29 U.S.C. § 1104(a), states, in relevant part, as follows:

> [A] fiduciary shall discharge his duties with respect to a plan
> solely in the interest of the participants and beneficiaries and -
>
> (A)    for the exclusive purpose of
>
>        (i)    providing benefits to participants and their
>             beneficiaries; and
>        (ii)    defraying reasonable expenses of administering the plan;
>
>                     [and]
>
> (B)    with the care, skill, prudence, and diligence under the
>        circumstances then prevailing that a prudent man acting in a like
>        capacity and familiar with such matters would use in the conduct
>        of an enterprise of like character and with like aims.

42.    Under 29 U.S.C. § 1103(c)(l), with certain exceptions not relevant here, the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan.

43.    Under ERISA, fiduciaries that exercise any authority or control over plan assets, including the selection of plan investments and service providers, must act prudently and solely in the interest of participants in a plan.

44.    ERISA's fiduciary duties are "the highest known to the law" and must be performed "with an eye single" to the interests of participants.

45.    ERISA also imposes explicit co-fiduciary liabilities on plan fiduciaries. 29 U.S.C. § 1105(a) provides a cause of action against a fiduciary for knowingly participating in a breach by another fiduciary and knowingly failing to cure any breach of duty.  ERISA states, in relevant part, as follows:

> In addition to any liability which he may have under any other
> provision of this part, a fiduciary with respect to a plan shall be liable

CLASS ACTION COMPLAINT

for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

> (1)  if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or

> (2)  if, by his failure to comply with section 404(a)(l) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

> (3)  if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

46.     29 U.S.C. § 1132(a)(2) authorizes a plan participant to bring a civil action to enforce a breaching fiduciary's liability to the plan under 29 U.S.C. § 1109.  Section 1109(a) provides, in relevant part:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

## VI.     CLASS ALLEGATIONS

47.     This action is brought as a class action by Plaintiff on behalf of himself and the following proposed class (the "Class"):

> All participants and beneficiaries in the U.S. Roche 401(k) Savings Plan (the "Plan") at any time on or after October 2, 2014 to the present (the "Class Period"), including any beneficiary of a deceased person who was a participant in the Plan at any time during the Class Period.

Excluded from the Class are Defendants and the Judge to whom this case is assigned or any other judicial officer having responsibility for this case who is a beneficiary.

48.     This action may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

CLASS ACTION COMPLAINT

49.    **Numerosity**.  Plaintiff is informed and believes that there are at least thousands of Class members throughout the United States.  As a result, the members of the Class are so numerous that their individual joinder in this action is impracticable.

50.    **Commonality**.  There are numerous questions of fact and/or law that are common to Plaintiff and all the members of the Class, including, but not limited to the following:

(a)    Whether Defendants failed and continue to fail to discharge their duties with respect to the Plan solely in the interest of the Plan's participants for the exclusive purpose of providing benefits to participants and their beneficiaries;

(b)    Whether Defendants breached their fiduciary duties under ERISA by failing to defray the reasonable expenses of administering the Plan; and

(c)    Whether and what form of relief should be afforded to Plaintiff and the Class.

51.    **Typicality**.  Plaintiff, who is a member of the Class, has claims that are typical of all of the members of the Class.  Plaintiff's claims and all of the Class members' claims arise out of the same uniform course of conduct by Defendants and arise under the same legal theories that are applicable as to all other members of the Class.

52.    **Adequacy of Representation**.  Plaintiff will fairly and adequately represent the interests of the members of the Class.  Plaintiff has no conflicts of interest with or interests that are any different from the other members of the Class.  Plaintiff has retained competent counsel experienced in class action and other complex litigation, including class actions under ERISA.

53.    **Potential Risks and Effects of Separate Actions**.  The prosecution of separate actions by or against individual Class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party opposing the Class; or (B) adjudications with respect to individual Class members that, as a practical matter, would be dispositive of the interests of the

other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

54.     **Predominance**.  Common questions of law and fact predominate over questions affecting only individual Class members, and the Court, as well as the parties, will spend the vast majority of their time working to resolve these common issues.  Indeed, virtually the only individual issues of significance will be the exact amount of damages incurred by each Class member, the calculation of which will ultimately be a ministerial function and which does not bar Class certification.

55.     **Superiority**.  A class action is superior to all other feasible alternatives for the resolution of this matter.  The vast majority, if not all, of the Class members are unaware of Defendants' breaches of fiduciary duty and prohibited transactions such that they will never bring suit individually.  Furthermore, even if they were aware of the claims they have against Defendants, the claims of virtually all Class members would be too small to economically justify individual litigation.  Finally, individual litigation of multiple cases would be highly inefficient, a gross waste of the resources of the courts and of the parties, and potentially could lead to inconsistent results that would be contrary to the interests of justice.

56.     **Manageability**.  This case is well-suited for treatment as a class action and easily can be managed as a class action since evidence of both liability and damages can be adduced, and proof of liability and damages can be presented, on a Class-wide basis, while the allocation and distribution of damages to Class members would be essentially a ministerial function.

57.     Defendants have acted on grounds generally applicable to the Class by uniformly subjecting them to the breaches of fiduciary duty described above.  Accordingly, injunctive relief, as well as legal and/or equitable monetary relief (such as disgorgement and/or restitution), along with corresponding declaratory relief, are appropriate with respect to the Class as a whole.

CLASS ACTION COMPLAINT

58.     Plaintiff's counsel will fairly and adequately represent the interests of the Class and are best able to represent the interests of the Class under Rule 23(g) of the Federal Rules of Civil Procedure.  Moreover, treating this case as a class action is superior to proceeding on an individual basis and there will be no difficulty in managing this case as a class action.

59.     Therefore, this action should be certified as a class action under Rules 23(a) and 23(b)(1) and/or 23(b)(3).

## COUNT I
### (For Breach of Fiduciary Duty)

60.     Plaintiff incorporates by reference the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

61.     Defendants' conduct, as set forth above, violates their fiduciary duties under ERISA § 404(a)(1)(A), (B) and (D), 29 U.S.C. § 1104(a)(1)(A), (B) and (D), in that Defendants failed and continue to fail to discharge their duties with respect to the Plan solely in the interest of the Plan's participants and beneficiaries and (a) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the Plan with (b) the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, and (c) by failing to act in accordance with the documents and instruments governing the Plan.  In addition, as set forth above, Defendants violated their respective fiduciary duties under ERISA to monitor other fiduciaries of the Plan in the performance of their duties.

62.     To the extent that any of the Defendants did not directly commit any of the foregoing breaches of fiduciary duty, at the very minimum, each such Defendant is liable under 29 U.S.C. § 1105(a) because he, she, they or it was a co-fiduciary and knowingly participated in (or concealed) a breach by another fiduciary, enabled another fiduciary to commit breaches of

CLASS ACTION COMPLAINT

fiduciary duty in the administration of his, her, their or its specific responsibilities giving rise to his, her, their or its fiduciary status and/or knowingly failing to cure a breach of fiduciary duty by another fiduciary and/or failed to take reasonable efforts to remedy the breach.

63.     As a direct result of Defendants' breaches of fiduciary duties, the Plan has suffered losses and damages.

64.     Pursuant to ERISA § 409, 29 U.S.C. § 1109, and ERISA § 502, 29 U.S.C. § 1132, Defendants are liable to restore to the Plan the losses that have been suffered as a direct result of Defendants' breaches of fiduciary duty and are liable for damages and any other available equitable or remedial relief, including prospective injunctive and declaratory relief, and attorneys' fees, costs and other recoverable expenses of litigation.

## COUNT II
### (Failure to Monitor Fiduciaries and Co-Fiduciary Breaches)

65.     Plaintiff incorporates by reference the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

66.     Genentech is responsible for appointing, overseeing, and removing members of the Administrative Committee.

67.     In light of its appointment and supervisory authority, Genentech had a fiduciary responsibility to monitor the performance of the Administrative Committee and its members.

68.     A monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and holding of Plan assets, and must take prompt and effective action to protect the Plan and participants when they are not.

69.     To the extent that fiduciary monitoring responsibilities of Genentech was delegated, its monitoring duty included an obligation to ensure that any delegated tasks were being performed prudently and loyally.

CLASS ACTION COMPLAINT

70.     Genentech breached its fiduciary monitoring duties by, among other things:

(a)   Failing to monitor and evaluate the performance of its appointees or have a system in place for doing so, standing idly by as the Plan suffered enormous losses as a result of the appointees' imprudent actions and omissions with respect to the Plan;

(b)   Failing to monitor its appointees' fiduciary processes, which would have alerted a prudent fiduciary to the breaches of fiduciary duties described herein, in clear violation of ERISA; and

(c)   Failing to remove appointees whose performances were inadequate in that they continued to maintain imprudent, excessively costly, and poorly performing investments within the Plan, all to the detriment of the Plan and its participants' retirement savings.

71.     As a consequence of these breaches of the fiduciary duty to monitor, the Plan suffered substantial losses. Had Genentech discharged its fiduciary monitoring duties prudently as described above, the losses suffered by the Plan would have been minimized and/or avoided. Therefore, as a direct result of the breaches of fiduciary duties alleged herein, the Plan and its participants have lost millions of dollars of retirement savings.

72.     Genentech is liable under 29 U.S.C. § 1109(a) to make good to the Plan any losses to the Plan resulting from the breaches of fiduciary duties alleged in this Count; to restore to the Plan any profits made through use of Plan assets; and is subject to other equitable or remedial relief as appropriate.

73.     Each of the Defendants also knowingly participated in the breaches of the other Defendants, knowing that such acts were a breach; enabled the other Defendants to commit a breach by failing to lawfully discharge their own fiduciary duties; and knew of the breaches by the other Defendants and failed to make any reasonable effort under the circumstances to remedy the breaches. Defendants, thus, are liable for the losses caused by the breaches of their co-fiduciaries under 29 U.S.C. § 1105(a).

CLASS ACTION COMPLAINT

## COUNT III
### (In the Alternative, Liability for Participation In Breach of Fiduciary Duty)

74.     Plaintiff incorporates by reference the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

75.     In the alternative, to the extent that any of the Defendants are not deemed a fiduciary or co-fiduciary under ERISA, each such Defendant should be enjoined or otherwise subject to equitable relief as a non-fiduciary from further participating in a breach of trust.

76.     To the extent any of the Defendants are not deemed to be fiduciaries and/or are not deemed to be acting as fiduciaries for any and all applicable purposes, any such Defendants are liable for the conduct at issue here, since all Defendants possessed the requisite knowledge and information to avoid the fiduciary breaches at issue here and knowingly participated in breaches of fiduciary duty by permitting the Plan to offer a menu of poor and expensive investment options that cannot be justified in light of the size of the Plan and the other expenses of the Plan.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself, the Class and the Plan, demands judgment against Defendants, for the following relief:

(a)     Declaratory and injunctive relief pursuant to ERISA § 502, 29 U.S.C. § 1132, as detailed above;

(b)     Equitable, legal or remedial relief to return all losses to the Plan and/or for restitution and/or damages as set forth above, plus all other equitable or remedial relief as the Court may deem appropriate pursuant to ERISA §§ 409 and 502, 29 U.S.C. §§ 1109 and 1132;

(c)     Pre-judgment and post-judgment interest at the maximum permissible rates, whether at law or in equity;

CLASS ACTION COMPLAINT

-24-

(d)     Attorneys' fees, costs and other recoverable expenses of litigation; and

(e)     Such further and additional relief to which the Plan may be justly entitled and the Court deems appropriate and just under all of the circumstances.

## **JURY DEMAND**

Plaintiff demands a jury trial with respect to all claims so triable.

## **NOTICE PURSUANT TO ERISA § 502(h)**

To ensure compliance with the requirements of ERISA § 502(h), 29 U.S.C. § 1132(h), the undersigned hereby affirms that, on this date, a true and correct copy of this Complaint was served upon the Secretary of Labor and the Secretary of the Treasury by certified mail, return receipt requested.

CLASS ACTION COMPLAINT

DATED: October 2, 2020                    SHEPHERD, FINKELMAN, MILLER
                                          & SHAH, LLP

                                          /s/ Kolin C. Tang
                                          Ronald S. Kravitz
                                          Kolin C. Tang
                                          201 Filbert Street, Suite 201
                                          San Francisco, CA 94133
                                          Telephone: (415) 429-5272
                                          Facsimile: (866) 300-7367
                                          Email: rkravitz@sfmslaw.com
                                                 ktang@sfmslaw.com

                                          James E. Miller
                                          Laurie Rubinow
                                          Shepherd Finkelman Miller & Shah, LLP
                                          65 Main Street
                                          Chester, CT 06412
                                          Telephone: (860) 526-1100
                                          Facsimile: (866) 300-7367
                                          Email: jmiller@sfmslaw.com
                                                 lrubinow@sfmslaw.com

                                          James C. Shah
                                          Michael P. Ols
                                          Alec J. Berin
                                          Shepherd Finkelman Miller & Shah, LLP
                                          1845 Walnut Street, Suite 806
                                          Philadelphia, PA 19103
                                          Telephone: (610) 891-9880
                                          Facsimile: (866) 300-7367
                                          Email: jshah@sfmslaw.com
                                                 mols@sfmslaw.com
                                                 aberin@sfmslaw.com

                                          *Attorneys for Plaintiffs, the Plan
                                          and the Proposed Class*