UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MATTHEW WEHNER,

    Plaintiff,

v.

GENENTECH, INC., et al.,

    Defendants.

Case No. 20-cv-06894-RS

**ORDER DENYING MOTION FOR ENTRY OF JUDGMENT**

## I. INTRODUCTION

Plaintiff Matthew Wehner moves for entry of final judgment on dismissed claims under Federal Rule of Civil Procedure 54(b). He sued under the Employee Retirement Income Security Act ("ERISA"), averring two "counts" in his Complaint: breach of fiduciary duty and failure to monitor co-fiduciaries' breaches. The factual bases for each were that the managers of his retirement plan charged excessive fees and made poor investment decisions. A previous order dismissed the portions of each claim that related to the investment decisions. Wehner now argues his Complaint made two claims: one about the fees, and one about the other mismanagement. Thus, he contends he is eligible for a certification of final judgment under Rule 54(b), which allows for an appeal before the rest of the case is decided when there is an entry of final judgment on a claim, and no just reason for delay. This entails considering the policy against piecemeal appeals, prejudice, and judicial economy. Although the law is unclear on what constitutes a claim for purposes of final judgment, even if there were a final judgment here, Defendants prevail on the second prong. There is not sufficient reason to contravene the general policy against piecemeal

1  appeals. Doing so will not expedite the case, but rather will create duplicative litigation. Wehner
2  will not be unduly prejudiced by an appeal in the normal course. For the reasons further stated
3  below, Wehner's motion is denied.

## II. BACKGROUND

Plaintiff Matthew Wehner brought this putative class action under ERISA against Defendants Genentech, Inc., and the U.S. Roche DC Fiduciary Committee. In March 2021, Wehner filed his First Amended Complaint with two "counts:" (1) breach of fiduciary duty, and (2) failure to monitor fiduciaries and co-fiduciary breaches. Under the first count, he argued Defendants breached their fiduciary duties in several ways, falling into two broad buckets. First, that they charged $10 million of excessive fees relative to similar funds, and second, that they managed the funds poorly, such that they could have made hundreds of millions of dollars more if they had upheld their fiduciary duty. Specifically, Wehner averred Defendants were imprudent in using certain custom-designed target date funds, and in selecting Russell Investment Management Company as the manager of those funds. Further, he averred they breached their duty of loyalty by using a master trust structure and having a continuing relationship with Russell. The failure to monitor fiduciaries count mirrored the preceding one: he accused Defendants of also failing to monitor their co-fiduciaries' breaches. Defendants moved to dismiss.

Defendants' motion to dismiss was granted in part and denied in part in a previous order. Each count was dismissed only in part. For the first, the motion was denied as to the excessive fees portion of the count, but granted as to all other parts, e.g., it was granted to the extent that it depended on theories of mismanagement such as "imprudence" or breaching the duty of loyalty. The motion was granted as to the second count to the extent that it depended on the portions of the first that were dismissed. In other words, since the only possible breach of fiduciary duty concerned the fees, the only possible breach of co-fiduciary duties or failing to monitor fiduciaries would be those relating to the fees. The portions of each count that were dismissed were dismissed with prejudice. Wehner now moves for entry of final judgment under Federal Rule of Civil Procedure 54(b), and to stay further proceedings in this Court pending appeal.

ORDER DENYING MOTION FOR ENTRY OF JUDGMENT
CASE NO. 20-cv-06894-RS
2

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 54(b) provides that "[w]hen an action presents more than one claim for relief . . . the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Otherwise, "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties." *Id.* Rule 54(b) certification is not available as of right. Rather, the Ninth Circuit has cautioned against granting such motions absent unusual circumstances. *See Wood v. GCC Bend, LLC*, 422 F.3d 873 (9th Cir. 2005).

There are two prongs to consider in determining whether to grant Rule 54(b) certification. First, the district court must determine whether there has been a "final judgment" with respect to the moving party, which the Supreme Court defined as "an ultimate disposition of an individual claim entered in the course of a multiple claims action." *Curtiss-Wright Corp. v. General Elec. Co.*, 446 U.S. 1, 7-8 (1980).

Second, if there was a final judgment on an individual claim, the district court must then determine whether there is no just reason to delay appeal of the claim at issue, in light of the judicial policy against piecemeal appeals, and equitable factors such as prejudice and delay. *Curtiss-Wright*, 446 U.S. at 8-10. The district court must "evaluate the 'interrelationship of the claims' and determine . . . 'whether the claims under review [are] separable from the others remaining to be adjudicated.'" *Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 576 (9th Cir. 2018) (quoting *Curtiss-Wright*, 446 U.S. at 8). Rule 54(b) certification is left to the sound discretion of the district court. *Core–Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1484 (9th Cir. 1993).

### IV. DISCUSSION

**A. What Constitutes a Claim for Final Judgment Purposes?**

What constitutes a "claim" is not well-defined. *Pakootas*, 905 F.3d at 574. The Supreme Court has expressly declined to define the term. *Id.*, discussing *Liberty Mut. Ins. Co. v. Wetzel*,

424 U.S. 737, 743 n.4 (1976). Indeed, Wright and Miller notes that "[T]he policies underlying Rule 54(b) are not well served, and certainly are not well explained, by reliance on efforts to define a claim." 15A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure: Jurisdiction § 3914.7 (2d ed. 2018). This has led the Ninth Circuit to take a pragmatic approach to the issue. *Pakootas*, 905 F.3d at 575.

To cut through this morass, Defendants argue the critical factor is how a plaintiff organizes his or her complaint into counts. This elevates form over substance to an untenable degree. The one Ninth Circuit case discussed in this section of the Opposition is misinterpreted; the quoted sections refer to the second prong of the Rule 54(b) analysis,[1] and the out-of-circuit district court cases are not binding. Wehner, on the other hand, argues that a claim for purposes of Rule 54(b) connotes "a set of facts giving rise to legal rights," quoting *Pakootas*, 905 F.3d at 575 (itself quoting *CMAX, Inc. v. Drewry Photocolor Corp.*, 295 F.2d 695, 697 (9th Cir. 1961)). In his view, since he has two factual bases for his Complaint, he has two claims: the fees and the mismanagement.

*Pakootas* did not squarely define "claim" like Wehner wishes. True, it discussed cases in which the existence of one set of facts or multiple set of facts was a critical factor, *e.g.*, *Ariz. State Carpenters Pension Tr. Fund v. Miller*, 938 F.2d 1038, 1040 (9th Cir. 1991) (one set of facts giving rise to multiple remedies still constituted one claim). Yet the number of sets of facts is not dispositive. *Pakootas* also discussed cases holding that claims with partially "overlapping facts" are not "foreclosed from being separate for purposes of Rule 54(b)." 905 F.3d at 575, citing *Wood*, 422 F.3d at 881. Under Wehner's view, every case with a distinct set of facts would be automatically eligible for Rule 54(b) certification. If only it were so simple. Instead, *Pakootas* also considered other factors, such as whether each claim required proving a factual showing not required by the other. *Id.* (explicitly invoking the *Blockburger* test from the Double Jeopardy context, *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). In other words, do the claims

---

[1] Understandably, as the questions overlap, as discussed in n.2.

have different elements, as opposed to merely involving different facts? Under *Blockburger*, one can be convicted for the same act under two different statutes only if the second requires proving a different fact than the first. The test does not concern multiple counts of the same crime (or claim) involving different facts, e.g., robbing the same store twice on two different days—it concerns two claims for the same set of facts, e.g., being convicted twice for robbing a store once.

In sum, determining whether something is a claim must involve considering both the "set of facts" and the "legal rights" involved. There may be situations where distinct sets of facts create claims of the same type, just as one set of facts can create multiple claims. This is why *Pakootas* merely tried to give "some guidance" at the "doctrine's outer edges." 905 F.3d at 575.[2]

**B. Final Judgment in This Case**

Here, Wehner has not obtained a final judgment on any claim. If the claims are the "counts" as he framed them in his Complaint, breach of fiduciary duty and failure to monitor, the analysis favors finding there was no final judgment. After all, only a portion of each was dismissed. Using the separate elements test from *Pakootas* by way of *Blockburger*, there is no standalone "imprudence" cause of action even to compare. There are only the statutory requirements of ERISA. The multiple factual bases for each claim are irrelevant under this line of scrutiny.[3] However, there is some merit to Wehner's contention that the Ninth Circuit caselaw

---

[2] Fortunately, even though the lack of clear rules on final judgment might appear to lead to unsatisfying outcomes, there is a similar analysis as part of the second prong of the Rule 54(b) analysis, discussed in the next section, which allows for a more holistic approach. In that process, where equitable factors such as prejudice and judicial economy are considered, courts must consider the "interrelationship of the claims" to determine whether they are "separable." *Pakootas*, 905 F.3d at 576. Thus, even if it is not entirely clear whether something is one claim or two in the first prong, the wider array of factors that can be considered in the second prong will allow for a sensible disposition.

[3] In discussing the second prong in his Reply, Wehner argues courts consider different factors when considering fee cases and mismanagement cases. Cases with different facts invite different considerations, but those cases are not necessarily discussing distinct claims for relief. This question would require further development if Wehner had brought state law claims for breach of fiduciary duty, which may or may not have different elements from ERISA (if they were not preempted, *see Halperin v. Richards*, 7 F.4th 534 (7th Cir. 2021)). However, assuming Wehner has brought all his possible claims against Defendants based on these facts to avoid being precluded from bringing them, both sets of facts create only these two types of claims for relief.

establishes a final judgment on a claim where it is factually distinct from other claims. Under this line of argument, Wehner at least comes closer to establishing separate claims. In his view, he has two claims because the fees give rise to each of his two claims, and the mismanagement gives rise to a second version of each claim. He could have styled them as two counts of each claim, one relating to each set of facts. He points out he would be entitled to two separate recoveries, which some courts have found indicative of separate claims. *Sussex Drug Prods. v. Kanasco, Ltd.*, 920 F.2d 1150, 1154 (3d Cir. 1990).

Ultimately the question comes down to whether multiple factual breaches of fiduciary duty constitute multiple breaches, or merely alternative grounds to find a breach. Wehner points to an example of a court discussing multiple "breaches" of fiduciary duty, but courts are not always so careful clearly to demarcate claims outside the context of a Rule 54(b) motion. In some areas of law, multiple factual bases clearly establish multiple breaches. For example, if an assailant hits someone three days in a row, there are three claims for battery. By contrast, in contract law, a breach of contract is often framed as one claim for relief, with multiple theories supporting said breach. One of the few tenets that is clear in the law surrounding Rule 54(b)'s first prong is that different legal theories are not different claims. *CMAX, Inc.*, 295 F.2d at 697 ("The word 'claim' in Rule 54(b) refers to a set of facts giving rise to legal rights in the claimant, not to legal theories of recovery based on those facts."). Fortunately, this need not be definitively determined, because even if he had a final judgment, Wehner does not prevail under the second prong of the analysis.

**C. Just Reason for Delay**

Even if there were a final judgment, Wehner does not prevail on the second prong of the Rule 54(b) analysis. Judicial economy does not compel certification of an appeal, and Wehner would not suffer any undue prejudice from filing an appeal in the normal course. First, as for the interest in judicial economy, Rule 54(b) certification is "scrutinized to 'prevent piecemeal appeals in cases which should be reviewed only as single units.'" *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 797-98 (9th Cir. 1991) (quoting *Curtiss-Wright*, 446 U.S. at 10). In this prong the interrelatedness of the claims can be considered more holistically. *See Purdy Mobile Homes, Inc. v. Champion*

ORDER DENYING MOTION FOR ENTRY OF JUDGMENT
CASE NO. 20-cv-06894-RS

6

*Homes Builders Co.*, 594 F.2d 1313 (9th Cir. 1979). "A similarity of legal or factual issues will weigh heavily against entry of judgment under Rule 54(b)." *Wood*, 422 F.3d at 881.

    Here, it is clear the claims are interrelated, and the case is a single unit. Both claims are for the same type of relief against the same parties for similar factual conduct (financial mismanagement of one sort or another). If certification were granted, a breach of fiduciary duty case against these Defendants would have to be tried and appealed in two separate cases. Witnesses would have to testify twice, and there would be overlapping testimony. For example, even Wehner has argued in his amended Complaint that Defendants were supposed to understand the "interrelationship" between the fees it negotiated and the investment options it chose. Dkt. No. 46 ¶ 100. Judges would have to refamiliarize themselves with the basic facts of the case, and then the overlapping testimony. That is the opposite of judicial economy. *See Curtiss-Wright*, 446 U.S. at 8.[4]

    Even the most expansive statements of when certification is appropriate, e.g., when it will "aid expeditious decision of the case," certification is inappropriate here. *Texaco, Inc.*, 939 F.2d at 797-98. At most, it would speed decision of one part of the case, but that is true of every possible 54(b) motion, and so it is not the standard under any reading of the Rule, and it would do so at the expense of judicial economy overall. Certification would not streamline the case. *Id.* Instead, it would break it in two.

    Second, as to prejudice, Wehner argues that he will "suffer significant prejudice if he is not able to pursue a timely appeal . . . if such an appeal is possible" when the current proceedings are resolved. Dkt. No. 67 at 9.  However, Wehner does not explain why he would be unable to file an appeal in the normal course.[5] It is also not even entirely clear what prejudice he fears. Wehner

---

[4] Wehner asks for a stay, but that would only delay the wasteful, duplicative litigation, and prolong the uncertainty for all involved. His request might reveal he plans to drop the fee claims if he loses on the mismanagement claims, but as discussed below, the fee claims seem to be worth litigating on their own.

[5] The closest he comes is saying "any resolution of the Remaining Claims short of trial would likely necessitate the release of the Dismissed Claims." Dkt. No. 67 at 15. Even if credited, going

argues the excessive fees are only a small part of the case, as the mismanagement supposedly cost the funds hundreds of millions in lost profits. Yet Wehner is not senselessly waiting on the adjudication of a mere flyspeck: $10 million in fees would be sufficient cause to litigate on its own. Granting certification on this basis alone would transform 54(b) from an exception into a norm. "Plainly, sound judicial administration does not require that Rule 54(b) requests be granted routinely." *Curtiss-Wright*, 446 U.S. at 10. Wehner's motion notes the dismissed claims relate to retirement investments, but it does not describe any specific prejudice that will result from an appeal in the normal course. No retirees are rendered insolvent until this action is resolved, a circumstance which would compel unusual haste. Wehner's supposed urgency is also belied by his four-month delay in filing this Motion. Neither Wehner nor any putative class members would suffer any prejudice from an appeal in the normal course, other than having to wait for a possible award like any other litigant. Ultimately, nothing differentiates this case from the "usual case where some issues are adjudicated earlier than others." *Foreman v. Bank of America N.A.*, No. 18-CV-01375, 2019 WL 8137145, at *4 (N.D. Cal. Dec. 3, 2019).

## V. CONCLUSION

For the reasons stated above, Wehner's motion for entry of final judgment is denied.

**IT IS SO ORDERED**.

Dated: January 20, 2022

_____
RICHARD SEEBORG
Chief United States District Judge

---

to trial is not prejudice, nor is deciding to release dismissed claims to pursue others.