MILLER SHAH LLP
JAMES C. SHAH (260435)
456 Montgomery St, Suite 1900
San Francisco, CA 94104
(866) 540-5505
jcshah@millershah.com

*Attorneys for Plaintiff, the Plan,*
*and the Class*

[Additional Counsel Listed on Signature Page]

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW WEHNER, Individually and as a representative of a class of similarly situated persons, on behalf of the U.S. ROCHE 401(K) SAVINGS PLAN,<br><br>          Plaintiff,<br><br>   v.<br><br>GENENTECH, INC. and the U.S. ROCHE DC FIDUCIARY COMMITTEE,<br><br>          Defendants. | CASE NO. 3:20-cv-06894 RS<br><br>**NOTICE OF MOTION AND PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND ENTRY OF FINAL JUDGMENT UNDER RULE 54(b) AS TO DISMISSED CLAIMS**<br><br>Date: December 28, 2023<br>Time: 1:30 p.m.<br>Location: Courtroom 3 – 17th Floor<br>Judge:  Hon. Richard Seeborg |

**PLEASE TAKE NOTICE** that Plaintiff, Matthew Wehner ("Plaintiff"), on behalf of the proposed Settlement Class (defined below) and the U.S. Roche 401(k) Savings Plan (the "Plan"), hereby moves ("Preliminary Approval Motion") the Court pursuant to Federal Rules of Civil Procedure 23 for entry of an Order that: (1) preliminarily approves the Settlement Agreement with Defendants, Genentech, Inc. and the U.S. Roche DC Fiduciary Committee  (collectively, "Defendants," and with Plaintiff, the "Parties");[1] (2) preliminarily certifies the proposed Settlement Class; (3) approves the proposed notice plan ("Notice Plan") in the Settlement Agreement and proposed Preliminary Approval Order; and (4) sets a final approval hearing on a date convenient for the Court at least 140 calendar days after the entry of a preliminary approval order.   A [Proposed] Preliminary Approval Order is attached as Exhibit C to the Settlement Agreement.

The proposed Settlement Class[2] is defined as follows:

> All persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period.

> The Class Period is October 20, 2014 through the date the Preliminary Approval Order, and the Class excludes all Defendants, including the individual members of the Committee during the Class Period, and their Beneficiaries.

For the reasons set forth in the Settlement Agreement, accompanying memorandum of law, supporting Declaration of James C. Shah, and all supporting papers, as well as the record in this

---

[1] The Settlement Agreement and its exhibits are attached to the accompanying Declaration of James C. Shah.  Terms not otherwise defined herein shall have the same meaning as in the Settlement Agreement.

[2] Pursuant to Plaintiff's and Defendants' stipulation on class certification, the certified class is limited to Plaintiff's remaining claim as a result of the Court granting in part and denying in part Defendants' motion to dismiss the Amended Complaint on June 14, 2021. (ECF No. 61.) Should Plaintiff appeal the Court's June 14, 2021 ruling successfully, the parties agreed the stipulation regarding class certification will not apply to Plaintiff's revived claims that were dismissed.

litigation, Plaintiff respectfully submits that the proposed settlement memorialized in the Settlement Agreement (the "Settlement") is fair, reasonable, and adequate, and should be preliminarily approved so that notice can be provided to the Settlement Class.

The Settlement is the product of arm's-length negotiations between the Parties and their counsel, all of whom comprehensively litigated this matter, are well-informed regarding all the issues in this litigation, and have significant experience in complex litigation of this type. Accordingly, Plaintiff respectfully requests that the Court enter the proposed Preliminary Approval Order and, if the Court deems necessary, hold a preliminary approval hearing on December 28, 2023, at 1:30 p.m. or at another date convenient for the Court.

Plaintiff proposes the following schedule associated with the Notice Plan and Fairness Hearing:

| Event | Reference to Preliminary Approval Order | Proposed Deadline |
|---|---|---|
| Preliminary approval hearing | | If the Court deems necessary, on December 28, 2023 at 1:30 p.m., or another date convenient for the Court |
| Settlement Administrator to set up settlement website and toll-free number | ¶ 8(b) | Within 30 days of entry of Preliminary Approval Order |
| Send Settlement Notice and Former Participant Claim Form to Class Members | ¶ 8(a) | Within 30 days of entry of Preliminary Approval Order |
| Final approval motion and applications for litigation expenses, and case contribution awards | ¶¶ 9, 10 | 45 days before Fairness Hearing |
| Independent Fiduciary report | Settlement Agreement ¶ 2.1 | Not later than 21 days before the Fairness Hearing |
| Deadline for filing of objections | ¶ 11 | Not later than 30 days before the Fairness Hearing |
| Deadline for Parties to respond to objections or file any additional papers in support of Settlement | ¶ 12 | Not later than 7 days before Fairness Hearing |
| Fairness Hearing | ¶ 6 | On a date convenient for the Court no sooner than 140 days after the date the |

| | | Preliminary Approval Order is entered |
| --- | --- | --- |

Pursuant to the inquiries provided in the Procedural Guidance for Class Action Settlements of this District, *see* Procedural Guidance for Class Action Settlements, available at: https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/, Plaintiff states as follows in support of his Preliminary Approval Motion:

    a. Any differences between the settlement class and the class proposed in the operative complaint (or, if a class has been certified, the certified class) and an explanation as to why the differences are appropriate.

There are no material differences between the class proposed in the operative Amended Class Action Complaint (ECF No. 46) and the proposed Settlement Class (*i.e.*, although there are slight differences in the language defining the class in the Complaint and the Settlement Class, their membership is the same). The proposed Settlement Class is also materially identical to the class certified in the Joint Stipulation and Order Regarding Class Certification entered by the Court on September 22, 2022 (ECF No. 98) for litigation of the Recordkeeping Claim subject to the Settlement.

    b. Any differences between the claims to be released and the claims in the operative complaint (or, if a class has been certified, the claims certified for class treatment) and an explanation as to why the differences are appropriate.

On June 14, 2021, Judge Orrick entered the Order Granting in Part and Denying in Part Motion to Dismiss First Amended Complaint (ECF No. 61). The claims to be released are those claims for which dismissal was denied (*i.e.*, the Recordkeeping Claim). Plaintiff notes that the claims dismissed in the June 14, 2021 (*i.e.*, the Investment Claim) are specifically preserved under the Settlement and intended to be appealed.

    c. The class recovery under the settlement (including details about and the value of injunctive relief), the potential class recovery if plaintiffs had fully prevailed on each of their claims, claim by claim, and a justification of the discount applied to the claims.

The class recovery under the Settlement will be $250,000.00,[3] which represents

---

[3] Defendants would also pay a portion of Administrative Expenses under the Settlement.

approximately 120% of the losses associated with Defendants' alleged failure to renegotiate the Plan's recordkeeping contract in advance of its expiration in 2020, the aspect of the Recordkeeping Claim about which Plaintiff beslieves he was most likely to prevail at trial.  The Settlement recovery likewise represents over 34% of the midpoint of realistically recoverable damages, with numbers on the higher end  of the range *assuming proof of complete liability*, which faced challenges given certain unique features of Defendants' process for monitoring the Plan's recordkeeping fees, and application of the most aggressive interest rates identified by Plaintiff's experts.  Moreover, the recovery represents roughly 15% of the total maximum damages amount associated with the Recordkeeping Claim according to Plaintiff's expert as modified by the sensitivity analysis asserted by Defendants' expert.  Further detail regarding the figures and justification of the discount is provided in the supporting memorandum.  *See* Memorandum of Law in Support, Section III.B.1.

  d. Any other cases that will be affected by the settlement, an explanation of what claims will be released in those cases if the settlement is approved, the class definitions in those cases, their procedural posture, whether plaintiffs' counsel in those cases participated in the settlement negotiations, a brief history of plaintiffs' counsel's discussions with counsel for plaintiffs in those other cases before and during the settlement negotiations, an explanation of the level of coordination between the two groups of plaintiffs' counsel, and an explanation of the significance of those factors on settlement approval.  If there are no such cases, counsel should so state.

There are no other cases that will be affected by the Settlement.

  e. The proposed allocation plan for the settlement fund.

The allocation of the Net Settlement Amount to each eligible Class Member will be *pro rata* based on the actual fees paid by each Class Member during the Class Period.  Further details are provided in the supporting memorandum and the proposed Plan of Allocation document attached thereto.  *See* Memorandum of Law in Support, Section III.B.3; Shah Decl., Exhibit 1-B.

  f. If there is a claim form, an estimate of the expected claim rate in light of the experience of the selected claims administrator and/or counsel based on comparable settlements, the identity of the examples used for the estimate, and the reason for the selection of those examples.

Participants, and Beneficiaries and Alternate Payees with Active Accounts in Plan do not

need to take any affirmative steps to receive payment under the Settlement, as their accounts will automatically be credited the amount due to them under the Settlement.  Only Authorized Former Participants, and Beneficiaries and Alternate Payees who no longer have Active Accounts will need to submit a Former Participant Claim.  Based on the settlement administrator and counsel's experience in similar cases involving ERISA breach of fiduciary duty claims, the expected claim rate for Class Members who no longer have Active Accounts is 25%, and the expected overall claim rate exceeds 50%.  (Shah Decl., Exhibit 3).

> g.  In light of Ninth Circuit case law disfavoring reversions, whether and under what circumstances money originally designated for class recovery will revert to any defendant, the expected and potential amount of any such reversion, and an explanation as to why a reversion is appropriate.

There would be no reversion under any circumstances.

**PLEASE TAKE FURTHER NOTICE** that Plaintiff also hereby moves for entry of a final judgment under Federal Rule of Civil Procedure 54(b) on the claims dismissed in the June 14, 2021 Order Granting in Part and Denying in Part Motion to Dismiss First Amended Complaint (ECF No. 61).  Such claims are specifically preserved under the Settlement and ripe for appeal.  A [Proposed] Final Judgment is attached as Exhibit E to the Settlement Agreement.

For the reasons set forth in the Settlement Agreement, accompanying memorandum of law, supporting Declaration of James C. Shah, and all supporting papers, as well as the record in this litigation, Plaintiff submits that the Motions should be granted.

Dated: November 21, 2023                    Respectfully submitted,

/s/ *James C. Shah*
James C. Shah
Ronald S. Kravitz
MILLER SHAH LLP
456 Montgomery St, Suite 1900
San Francisco, CA 94104
(866) 540-5505
jcshah@millershah.com
rskravitz@millershah.com

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND .................................................................................................. 2

      A.     Class Definition ...................................................................................... 2

      B.     Released Claims ....................................................................................... 2

      C.     Class Relief ............................................................................................. 2

      D.     Approval of Settlement by Independent Fiduciary ................................. 4

      E.     Settlement Administration ...................................................................... 4

      F.     Dissemination of Notice to Class ........................................................... 5

      G.     Opportunity to Object ............................................................................. 6

      H.     Retention of Jurisdiction by Court ......................................................... 7

III.    ARGUMENT ....................................................................................................... 7

      A.     The Court Should Maintain Certification of the Settlement Class ......... 7

      B.     The Settlement Warrants Preliminary Approval ..................................... 8

      C.     Final Judgment on the Investment Claims Should be Entered Under Rule 54(b) ............................................................................................................. 13

IV.     CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcan Aluminum Corp. v. Carlsberg Fin. Corp.*,
689 F.2d 815 (9th Cir. 1982) ........................................................................ 23

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ............................................................................... 16, 17

*Blackmon v. Zachary Holdings, Inc.*,
2022 WL 2866411 (W.D. Tex. July 21, 2022) ............................................ 14

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ...................................................................... 18

*Churchill Village, L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ........................................................................ 21

*Curtiss-Wright Corp. v. Gen. Elec. Co.*,
446 U.S. 1 (1980) .......................................................................................... 23

*De Leon v. Ricoh USA, Inc.*,
2019 WL 6311379 (N.D. Cal. Nov. 25, 2019) ............................................. 16

*Deaver v. Compass Bank*,
2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) .............................................. 20

*Does I v. Gap, Inc.*,
2002 WL 1000073 (D.N. Mar. Is.  May 10, 2002) ....................................... 19

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974) ...................................................................................... 21

*Etter v. Allstate Ins.*,
2018 WL 5761755 (N.D. Cal. May 30, 2018) .............................................. 19

*Fleming v. Impax Lab'ys Inc.*,
2021 WL 5447008 (N.D. Cal. 2021) ............................................................ 20

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ...................................................................... 16

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .............................................. 22

*In re Lithium Ion Batteries Antitrust Litig.*,
2017 WL 1086331 (N.D. Cal. Mar. 20, 2017) (overruling ........................... 20

*In re MyFord Touch Consumer Litig.*,
  2019 WL 1411510 (N.D. Cal. 2019) ........................................................................ 20

*In re Nexus 6P Prods. Liab. Litig.*,
  2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) ......................................................... 22

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................................... 19

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) .................................................................................. 18

*In re US FoodService Pricing Litig.*,
  729 F.3d 108 (2d Cir. 2013) ..................................................................................... 17

*Jewel v. Nat'l Sec. Agency*,
  810 F.3d 622 (9th Cir. 2015) .................................................................................... 23

*Johnson v. Serenity Transp., Inc.*,
  2021 WL 3081091 (N.D. Cal. July 21, 2021) .................................................... 16, 19

*Jones v. Coca-Cola Consolidated, Inc.*,
  2022 WL 703605 (W.D.N.C. Mar. 8, 2022) ............................................................ 14

*Karpik v. Huntington Bancshares Inc.*,
  2021 WL 757123 (S.D. Ohio Feb. 18, 2021) ........................................................... 22

*Mullane v. Central Hanover Bank and Trust Co.*,
  339 U.S. 306 (1950) .................................................................................................. 21

*Noel v. Hall*,
  568 F.3d 743 (9th Cir. 2009) .................................................................................... 23

*Peters v. Nat'l R.R. Passenger Corp.*,
  966 F.2d 1483 (D.C. Cir. 1992) ................................................................................ 21

*Slezak v. City of Palo Alto*,
  2017 WL 2688224 (N.D. Cal. June 22, 2017) .......................................................... 18

*Tadepalli v. Uber Techs., Inc.*,
  2015 WL 9196054 (N.D. Cal. Dec. 17, 2015) .......................................................... 18

*Texaco, Inc. v. Ponsoldt*,
  939 F.2d 794 (9th Cir. 1991) .................................................................................... 22

*Urakhchin v. Allianz Asset Mgt. of Am., L.P.*,
  2018 WL 3000490 (C.D. Cal. Feb. 6, 2018) ............................................... 17, 18, 19

*Viceral v. Mistras Grp., Inc.*,
2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ........................................................... 18

*Vikram v. First Student Mgt., LLC*,
2019 WL 1084169 (N.D. Cal. Mar. 7, 2019) ............................................................ 16

*Walsh v. CorePower Yoga LLC*,
2017 WL 589199 (N.D. Cal. Feb. 14, 2017) ............................................................ 19

*Wood v. GCC Bend, LLC*,
422 F.3d 873 (9th Cir. 2005) ........................................................................ 22, 23

**Statutes**

28 U.S.C. § 1715 ...................................................................................... 15

29 U.S.C. § 1001 ...................................................................................... 10

**Rules**

Fed. R. Civ. P. 23 .............................................................................. *passim*

Fed. R. Civ. P. 54(b) ........................................................................ 5, 6, 22, 23

**Regulations**

68 Fed. Reg. 75,632 .................................................................................. 13

## MEMORANDUM OF POINT AND AUTHORITIES

## I.    <u>INTRODUCTION</u>

The Parties have agreed to a proposed settlement ("Settlement") in this class action lawsuit brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*  The Settlement provides relief of $250,000.00 on Plaintiff's surviving claim that Defendants caused the Plan to pay excessive recordkeeping and administrative fees ("Recordkeeping Claim") and preserves for appeal Plaintiff's claim that Defendants failed to appropriately monitor the Plan's investments and retained imprudent investments in the Plan ("Investment Claim").  Based on the substantial relief provided by the Settlement relative to risks and costs of pursuing the Recordkeeping Claim at trial, Plaintiff and Class Counsel believe the Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

Plaintiff and Class Counsel have vigorously pursued relief on behalf of the Plan, and Defendants' Counsel have vigorously defended against Plaintiff's allegations, all the way to the precipice of the trial of the Recordkeeping Claim originally scheduled to begin on October 30, 2023.  The Parties agreed to the Settlement after extensive motion practice, full discovery, and an earlier attempt to resolve the litigation at mediation.  The Parties' negotiations occurred at arm's-length through experienced counsel as they simultaneously worked to prepare for trial, including factual stipulations, disclosures of witnesses and exhibits, and the preparation of a joint pretrial order, among numerous other items.  Resolving the Recordkeeping Claim at this juncture allows the Parties to avoid continued and costly litigation of this claim and otherwise deplete resources available for settlement, and which could result in a recovery less than the recovery provided by the Settlement, while allowing the Parties to focus on the anticipated appeal of the Investment Claim and eventual resolution of the entire action.

All prerequisites for preliminary approval of the Settlement are satisfied.  As such, Plaintiff respectfully submits that the Motion should be granted, and notice should be provided to the Settlement Class in accordance with the proposed Notice Plan.  Moreover, final judgment should be entered on the Investment Claim.

## II.   BACKGROUND

### A.  Class Definition

The Settlement Class is defined as:

All persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period.

The Class Period is October 20, 2014 through the date the Preliminary Approval Order, and the Class excludes all Defendants, including the individual members of the Committee during the Class Period, and their Beneficiaries.

### B.  Released Claims

If the Court grants Final Approval of the Settlement, the Settlement Class will be deemed to have released Defendants from all claims described in Section 1.42 of the Settlement Agreement, which is incorporated herein by reference. (*See* Shah Decl. ¶ 2, at Exhibit 1, Section 1.42). In general terms, these claims include the Recordkeeping Claim and all derivative claims and claims arising out of Defendants' monitoring of the Plan's recordkeeping and administrative services arrangements and fees. The Settlement would specifically preserve for appeal the Investment Claim and related derivative claims.

### C.  Class Relief

#### 1.  Settlement Fund

Defendants have agreed to pay a Settlement Amount of $250,000 to resolve the Recordkeeping Claim. The Settlement Fund will be used to pay the following amounts associated with the Settlement: (1) compensation to current and authorized former participants of the Plan as described in Section 5.2–5.3 of the Agreement; (2) all claims for litigation expenses approved by the Court; (3) all costs arising from evaluation of the settlement by the Independent Fiduciary as described in Section 5.1.3 of the Agreement; (4) all costs necessary to administer the Settlement, including, among other things, payment for the services of the Settlement Administrator and any related taxes and tax-related costs other than the portion that Defendants will offset pursuant to the Settlement Agreement; and (5) payment of a Case Contribution Awards to Plaintiff not to exceed $5,000, subject to Court approval. (*See* Shah, at Exhibit 1, Article 5).

### 2.   Distribution of Settlement Proceeds to Class Members

The amount paid to each Class Member will be determined by the proposed Plan of Allocation that is based on the actual fees paid by each Class Member during the Class Period. (*See* Shah Decl., Exhibit 1-B).  Participants, and Beneficiaries and Alternate Payees with Active Accounts in the Plan do not need to do anything affirmatively to receive payment under the Settlement, as their accounts will automatically be credited the amount due to them under the Settlement.  As for Authorized Former Participants, and Beneficiaries and Alternate Payees who no longer have Active Accounts, these individuals need only submit a Former Participant Claim Form to be eligible for payment under the Settlement, which, at their election, will be made either by check or rollover to an individual retirement account or other eligible employer plan.  (*See id.*).

### 3.   Payment of Case Contribution Awards

At Final Approval, Plaintiff will ask the Court to approve a Case Contribution Award of up to $5,000 to be paid out of the Settlement Fund to compensate Plaintiff for his time and efforts serving as class representatives, subject to the approval of the Court.  Plaintiff has actively participated in the litigation and assisted Class Counsel in drafting the respective complaints and other documents, consulted with Class Counsel as needed, answered discovery-related requests for information, sat for a deposition, and participated in settlement and strategy discussions.  (*See* Shah Decl. ¶ 5).  In addition, Plaintiff was prepared to attend the trial originally scheduled to begin on October 30, 2023, if requested.  (*See id.*).  Consistent with awards regularly granted under similar circumstances, Plaintiff believes that he should be compensated for his work done in support of the litigation and for assisting Class Counsel in achieving a strong settlement on behalf of the Class, as well as the reputational and other risks he undertook in bringing this Action.

### 4.   Payment of Litigation Expenses

At final approval, Class Counsel anticipates seeking an award of reasonable and necessary expenses advanced by Class Counsel and carried for the duration of the litigation, subject to the Approval of the Court, but does not anticipate seeking any attorneys' fees.  Class Counsel has prosecuted the Class Action on a contingent basis and advanced all associated costs with no expectation of recovery in the event the litigation did not result in a recovery for the Settlement

Class.  (*See* Shah Decl. ¶ 15, Exhibit 1 § 6.1).

**5.  Uncashed Checks Distributed to Settlement Fund**

All checks issued pursuant to this Plan of Allocation shall expire one hundred eighty (180) calendar days after their issue date.  All checks that are undelivered or are not cashed before their expiration date shall revert to the Settlement Fund to be utilized as set forth in the Plan of Allocation.  (*See* Shah Decl., Exhibit 1-B).  There shall be no reversion to Defendants.  (*See id.*).

**D.  Approval of Settlement by Independent Fiduciary**

As an additional means of confirming the fairness, reasonableness, and adequacy of the Settlement, and to facilitate the Plan's release of claims under the Department of Labor's regulations pertaining to prohibited transactions, pursuant to the Settlement Agreement, Defendants shall retain an Independent Fiduciary to approve and authorize the Settlement on behalf of the Plan and Class Members.  (*See* Shah Decl., Exhibit 1, Section 2.1).  Defendants, Defendants' Counsel, Plaintiff, and Class Counsel shall provide the Independent Fiduciary with sufficient information so that the Independent Fiduciary can review and evaluate the Settlement and each of the related applications.  (*Id.*).  The Independent Fiduciary's review will include interviews with Class Counsel and Defendants' Counsel, respectively, and a review of public and confidential settlement information.  Furthermore, the Independent Fiduciary shall comply with all relevant conditions set forth in Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended ("PTE 2003-39"), in making its determination, for the purpose of Defendants' reliance on PTE 2003-39.  (*Id.*)

**E.  Settlement Administration**

The Settlement Administrator, whom Class Counsel selected and the Parties have agreed upon, shall be Strategic Claims Services ("SCS"), a settlement administrator with over 20 years of experience administering class action settlements.  (Shah Decl. ¶ 7).  SCS' costs of administration are competitive based on periodic bids solicited and received by Class Counsel.  (*See id.*).  Class Counsel has worked with SCS on several other ERISA, securities, and other class action cases over the past ten years.  (*Id.*)  Class Counsel have discussed with SCS practical means to contain

administrative expenses. (*Id.*)

SCS has successfully administered a number of complex ERISA class action settlements in an efficient and effective manner, including class settlements of similar ERISA claims, its projected expense is in line with those settlements and, unlike some of its competitors in Class Counsel's experience, SCS consistently stays within its proposed budget. *See* Shah Decl. ¶ 7; *see e.g.*, *Garthwait v. Eversource*, No. 3:20-cv-00902-JCH, ECF No. 197 ¶ 8 (D. Conn. Apr. 27, 2023) (approving appointment of SCS to administer settlement of similar ERISA claims); *Blackmon v. Zachary Holdings, Inc.*, No. SA-20-CV-00988-JKP, 2022 WL 2866411, at *1 (W.D. Tex. July 21, 2022) (same); *Jones v. Coca-Cola Consolidated, Inc.*, No. 320CV00654FDWDSC, 2022 WL 703605, at *4 (W.D.N.C. Mar. 8, 2022) (same). SCS also has robust procedures for handling class member data and sufficient insurance coverage. (Shah Decl. ¶ 7, at Exhibit 3). Accordingly, based upon Class Counsel's experience working with SCS in similar cases, Class Counsel is confident that SCS will perform its work in an efficient, secure, and cost-effective manner, while ensuring a high claims rate among Class Members. (*See id.*).

The Settlement Administrator shall administer the Settlement subject to the supervision of Class Counsel, Defendants' Counsel, and the Court as circumstances may require. (Shah Decl. ¶ 7). The Settlement Administrator will be responsible for providing Notice to the Class, as described below, and for maintaining the Settlement Website providing information regarding the Settlement as well as a toll-free telephone number via which Class Members can direct questions about the Settlement. (Shah Decl., at Exhibit 1). The complete responsibilities of the Settlement Administrator are detailed in the Settlement Agreement.

## F. Dissemination of Notice to Class

Within 45 days of the entry of the Preliminary Approval Order, or as may otherwise be determined by the Court, the Settlement Administrator shall provide Notice of the Settlement to Class Members by electronic mail (if available) or first-class mail. (Shah Decl., Exhibit 1-A). The Notice shall include Class Counsel's contact information and the Settlement Website information, which will list key deadlines and links to the Notice, Former Participant Claim Form, the Preliminary Approval Order, motions for preliminary approval, final approval, and applications

for attorneys' fees, expenses, and case contribution awards, the Complaint, and other important documents in the case. (Shah Decl., at Exhibit 1-A). In addition, the Notice will include instructions on how to access the case docket via PACER or in person at any of the Court's locations, the date and time of the final approval hearing, and a note advising Class Members that the hearing date may change without further notice to the Class and instructions to check the settlement website or the Court's PACER site to confirm that the date has not changed. *See id.*

Defendants shall use all reasonable efforts to provide necessary information to the Settlement Administrator so that it may effectuate Notice, implement the Plan of Allocation, and distribute the Settlement Funds. (Shah Decl. ¶ 8.2). The Settlement Administrator shall update mailing addresses through the National Change of Address database before mailing (with all returned mail skip-traced and promptly re-mailed). The Settlement Administrator shall use commercially reasonable efforts to locate any Class Member whose Notice is returned and re-mail such Notice one additional time if an updated location is identified. (*Id.*). As many Class Members are expected to have Active Accounts, a significant number of Settlement Class members will be easily reached through their contact information associated with those accounts, while Class Members without Active Accounts should be reachable through the forwarding information provided to the Plan's recordkeeper when their accounts were closed.

No later than 10 calendar days after the filing of the motion for preliminary approval of the Settlement, Defendants will serve the Class Action Fairness Act Notice on the Attorney General of the United States, the Secretary of the Department of Labor, and the attorneys general of all states in which Class Members reside, as specified by 28 U.S.C. § 1715. (Shah Decl., Exhibit 1-E). The Settlement Administrator also shall establish a toll-free telephone number to which Class Members can direct questions about the Settlement. (Shah Decl., Exhibit 1, Section 13.2).

### G. Opportunity to Object

Class Members shall be permitted to object to the Settlement and/or Plaintiff's forthcoming Motion for Award of Litigation Expenses and Case Contribution Award. The Class Notice shall provide instructions and requirements for Class Members to object to the Settlement. (Shah Decl., Exhibit 1-A). Class Members shall be provided with as much as 110 days to file written objections

and any supporting papers prior to the Final Approval hearing, which will be held no earlier than 140 days after the entry of the Preliminary Approval Order.  (*Id*.).

**H. Retention of Jurisdiction by Court**

Pursuant to Section 15.11 of the Agreement, the Court shall retain jurisdiction as to all matters relating to administration, enforcement, and interpretation of the Agreement after the Effective Date.

## III.  <u>ARGUMENT</u>

Under Federal Rule of Civil Procedure 23, when the Court is presented with a proposed settlement, it must determine whether the proposed settlement class satisfies the requirements for class certification under Rule 23.  *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613–14 (1997).  Class certification under Rule 23 has two primary components: a proposed class must meet the four requirements of Rule 23(a) and the requirements of at least one subsection of Rule 23(b).  *See id.*; Fed. R. Civ. P. 23; *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–1022 (9th Cir. 1998).

Approval of a settlement under Rule 23 involves "a two-step process": "First, the Court decides whether the class action settlement deserves preliminary approval.  Second, after notice is given to class members, the Court determines whether final approval is warranted." *Vikram v. First Student Mgt., LLC*, No. 17-CV04656-KAW, 2019 WL 1084169, at *3 (N.D. Cal. Mar. 7, 2019).

In connection with the preliminary approval inquiry, the Court must preliminarily determine whether the Settlement is fair, reasonable, and adequate.  "At the preliminary approval stage, 'the settlement need only be potentially fair.'" *Johnson v. Serenity Transp., Inc.*, No. 15-CV02004, 2021 WL 3081091, at *4 (N.D. Cal. July 21, 2021) (citation omitted).  "The Court cannot, however, fully assess such factors until the final approval hearing." *De Leon v. Ricoh USA, Inc.*, No. 18-CV-03725, 2019 WL 6311379, at *10 (N.D. Cal. Nov. 25, 2019).

**A. The Court Should Maintain Certification of the Settlement Class**

The requirements of Rule 23(a) are commonly referred to as numerosity, commonality, typicality, and adequacy of representation. *See Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 613

(1997); *In re US FoodService Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013).  In certifying the Class for litigation purposes, this Court previously found that each of the prerequisites of Rule 23(a) were satisfied and that the Class should be certified under Rule 23(b)(1).  *See* Joint Stipulation and Order Regarding Class Certification, ECF No. 98 (certifying class, appointing Plaintiff as class representative, and appointing Plaintiff's counsel as counsel on behalf of the Class).  None of the facts or circumstances supporting the Court's certification order have changed; in fact, the circumstances of a settlement provide even greater support for class certification.  This is because Plaintiff asserts claims on behalf of the Plan, participants and beneficiaries have uniform theories of liability and relief, and the structure of ERISA requires that participants and beneficiaries bringing actions for breach of fiduciary duty must do so on behalf of a plan as a whole.  Moreover, the Settlement would provide relief to the Plan as a whole, which would then be distributed to individual participant accounts pursuant to the Plan of Allocation.

The Court should find that certification of the Class should be maintained for settlement purposes.

## B. The Settlement Warrants Preliminary Approval

### 1. The Settlement

"To preliminarily approve a proposed class-action settlement, Rule 23(e)(2) requires the Court to determine whether the proposed settlement is fair, reasonable, and adequate." *Urakhchin v. Allianz Asset Mgt. of Am., L.P.*, SACV151614, 2018 WL 3000490, at *5 (C.D. Cal. Feb. 6, 2018) (citing Fed. R. Civ. P. 23(e)(2)).  In determining whether a settlement meets these requirements, courts look to factors including the strength of the claims and defenses, the risk, expense, and complexity of continued litigation, the stage of proceedings and extent of discovery completed, and the experience and views of class counsel.  *See id.*  The relative importance of these factors depends upon the unique facts and circumstances of a given case, and "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness . . . ." *Id.* (citations and alterations omitted).  "[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Campbell v. Facebook, Inc.*, 951 F.3d

1106, 1121 (9th Cir. 2020) (same).

As a preliminary matter, although Plaintiff believes there is strong legal and factual support for the Recordkeeping Claim, there is inherent risk in continued litigation of this claim. The Parties have engaged in significant motion practice, including filing dispositive and expert exclusion motions. Trial presentations would rely heavily on competing expert testimony and likely given way to a complex appeal. Accordingly, the Settlement is a product of an extensive arm's-length process in recognition of these risks. *See Urakhchin*, 2018 WL 3000490, at *4. "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Viceral v. Mistras Grp., Inc.*, No. 15-CV-02198, 2016 WL 5907869, at *8 (N.D. Cal. Oct. 11, 2016); *see also Slezak v. City of Palo Alto*, No. 16-CV-03224-LHK, 2017 WL 2688224, at *5 (N.D. Cal. June 22, 2017) (finding the "likelihood of fraud or collusion [wa]s low . . . because the Settlement was reached through arm's-length negotiations, facilitated by an impartial mediator."). Further, Class Counsel and Defendants' counsel are experienced in ERISA litigation, and each possess a thorough understanding of the factual and legal issues involved in the Action. *See Tadepalli v. Uber Techs., Inc.*, No. 15-CV-04348-MEJ, 2015 WL 9196054, at *9 (N.D. Cal. Dec. 17, 2015) ("Settlements are entitled to 'an initial presumption of fairness' because they are the result of arm's-length negotiations among experienced counsel.").

Class Counsel conducted substantial investigation and analysis of thousands of pages of documents, depositions of fact witnesses, expert disclosures and depositions of expert witnesses, and disclosures in connection with preparation for trial. (*See* Shah Decl. ¶ 11). "Discovery can be both formal and informal" and, here, Plaintiff and Class Counsel engaged in significant investigation of the Parties' claims and defenses even before filing the initial complaint, and since then have undertaken significant formal fact and expert discovery. *See Urakhchin*, 2018 WL 3000490, at *4. Indeed, the Parties were engaged in vigorous litigation and trial preparation when they agreed to the Settlement and further litigation promised to be similarly lengthy and complex, involving numerous competing experts on liability issues concerning Plaintiff's claims and Defendants' defenses as well as the Plan's alleged losses. Thus, Plaintiff faced meaningful challenges in his ability to obtain a recovery on behalf of the Plan, even setting aside the additional

complexity and delay of likely appeals, which strongly supports the preliminary approval of the Settlement.  *See Urakhchin*, 2018 WL 3000490, at *4.

Class Counsel has significant experience in class action litigation generally and ERISA breach of fiduciary duty litigation in particular, and are of the opinion that the Settlement is fair and reasonable.  "'The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.'"  *Urakhchin*, 2018 WL 3000490, at *5 (quoting *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) and granting preliminary approval).  This presumption is especially warranted based on the opinion of "experienced plaintiffs' advocates and class action lawyers."  *Does I v. Gap, Inc.*, No. CV-01-0031, 2002 WL 1000073, at *13 (D.N. Mar. Is.  May 10, 2002); *Walsh v. CorePower Yoga LLC*, No. 16-CV-05610, 2017 WL 589199, at *10 (N.D. Cal. Feb. 14, 2017) (holding that settlements that are "the result of arms'-length negotiations among experienced counsel" weigh in favor of preliminary approval.).  The Settlement provides a substantial monetary recovery of $250,000.  Further, the Parties will submit the Settlement and related applications to an independent fiduciary retained on behalf of the Plan, which will provide an opinion on the Settlement's fairness before the final fairness hearing.

"Preliminary approval is thus appropriate where 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'"  *Johnson v. Serenity Transp., Inc.*, No. 15-CV02004, 2021 WL 3081091, at *4 (N.D. Cal. July 21, 2021) (citation omitted); *Etter v. Allstate Ins. Co.*, No. C 17-00184, 2018 WL 5761755, at *1 (N.D. Cal. May 30, 2018) (stating same).  Plaintiff's experts have estimated the average range of realistic and supportable damages to be from $208,993 to $1,007,000.  (*See* Shah Decl. ¶ 13.)  Numbers on the higher end of this range *assume proof of complete liability*, which faced challenges given certain unique features of Defendants' process for monitoring the Plan's recordkeeping fees, and application of the most aggressive interest rates identified by Plaintiff's experts.  (*See id.*)  Indeed, the Settlement recovery represents approximately 120% of the losses associated with Defendants' alleged failure to renegotiate the Plan's recordkeeping contract in advance of its expiration in 2020, the aspect of the Recordkeeping

Claim about which Plaintiff believes was most likely to prevail at trial. (*See id.*)  The Settlement recovery likewise represents over 34% of the midpoint of realistically recoverable damages. (*See id.*)  Even under less conservative assumptions, the Settlement recovery is favorable, as it represents roughly 15% of the total maximum damages amount associated with the Recordkeeping Claim according to Plaintiff's expert as modified by the sensitivity analysis asserted by Defendants' expert.  While figures in this range are defensible, the likelihood of establishing the higher figure faces more challenges than the lower figure.  Indeed, if the Action proceeded through trial, Defendants would have challenged the loss calculation methodology and interest rates applied (not to mention challenges to causation and other elements of Plaintiff's claims).  Thus, the Settlement is well within the accepted range of recovery in class action settlements across the country and in this district.  *See id.*; *see also Fleming v. Impax Lab'ys Inc*., 2021 WL 5447008, at *10 (N.D. Cal. 2021) (settlement recovery representing 12.5% of total recoverable damages is "in a range consistent with the median settlement recovery in class actions"); *In re MyFord Touch Consumer Litig*., 2019 WL 1411510, at *10 (N.D. Cal. 2019) (approving settlement providing for 5.7% of total possible recovery); *Deaver v. Compass Bank*, 2015 WL 8526982, at *7 (N.D. Cal. Dec. 11, 2015) (10.7% of total damages); *In re Lithium Ion Batteries Antitrust Litig*., 2017 WL 1086331, at *4 (N.D. Cal. Mar. 20, 2017) (overruling objections to settlement amount representing between 2.2% and 11.2% of total possible damages).

In sum, the Settlement is the product of vigorous litigation and arm's-length negotiation by experienced and well-informed counsel, adequately reflects the strength of the parties' claims and defenses, is based on sufficient discovery and information, and provides significant relief to the Settlement Class.  Accordingly, the Court should find the Settlement is fair, reasonable, and adequate, and merits preliminary approval.

### 2.  Notice Plan

In addition to preliminarily approving the proposed Settlement, the Court must approve the proposed means of notifying Settlement Class members. *See* Fed. R. Civ. P. 23(e)(1). Due process and Rule 23(e) do not require that each Class Member receive notice, but rather that class notice must be "reasonably calculated, under the circumstances, to apprise interested parties of the

pendency of the action and afforded them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314 (1950). "Individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

The Notice Plan is designed to reach the largest number of Settlement Class members possible. The Settlement Notice will be sent by email and/or first-class mail to the last known address of each Settlement Class member prior to the Fairness Hearing. *See Peters v. Nat'l R.R. Passenger Corp.*, 966 F.2d 1483, 1486 (D.C. Cir. 1992) ("It is beyond dispute that notice by first class mail ordinarily satisfies Rule 23(c)(2)'s requirement that class members receive 'the best notice practicable under the circumstances.'"). Notably, all Settlement Class members had Plan accounts, so the Plan's recordkeeper has forwarding addresses and other identifying information for a substantial portion of the Settlement Class. In addition, the Notice, Settlement Agreement, preliminary and final approval motions and related applications, and other litigation documents will be posted on the Settlement Website, and the Settlement Administrator will establish and monitor a toll-free number to field Settlement Class member inquiries. The Notice will also provide Class Counsel's contact information and include instructions on how to access the case docket via PACER or in person at any of the court's locations, the date and time of the final approval hearing, and a note advising Class Members that the hearing date may change without further notice to the Class and instructions to check the settlement website or the Court's PACER site to confirm that the date has not changed.

The Notice Plan satisfies all due process considerations and meets the requirements of Rule 23(e). The Notice Plan clearly describes: (i) the terms and operation of the Settlement; (ii) the nature and extent of the Released Claims; (iii) the maximum attorneys' fees, litigation expenses, and case contribution awards that may be sought; (iv) the procedure and timing for objections; and (v) subject to the Court's schedule, the date and location of the Fairness Hearing.

### 3.  Plan of Allocation

The Plan of Allocation provides recovery to members of the Settlement Class on a *pro rata* basis, with no preferential treatment for the Class Representatives or any segment of the Settlement Class.  A *pro rata* distribution based on each class member's loss relative to that of the class as whole "has frequently been determined to be fair, adequate, and reasonable."  *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479, 2018 WL 6619983, at *12 (N.D. Cal. Dec. 18, 2018) (collecting cases).  This is substantially similar to plans approved by this Court in analogous ERISA litigation in this District and around the country.  *See, e.g.*, *Terraza v. Safeway Inc.*, No. 16-cv-03994-JST, Dkt. 268 (N.D. Cal. Sept. 8, 2020) ("Settlement Scores will be determined by calculating the Class Member's year-end asset amounts in the Plan during the Class Period . . . ."); *see also Barcenas v. Rush Univ. Medical Ctr.*, No. 22-cv-00366, Dkt. 73 (N.D. Ill. Jan. 19, 2023) (approving substantially similar *pro rata* plan of allocation in analogous ERISA breach of fiduciary duty action); *Karpik v. Huntington Bancshares Inc.*, 2021 WL 757123, at *2 (S.D. Ohio Feb. 18, 2021) (approving a plan of allocation distributing the settlement fund on a *pro rata* basis).  Additionally, courts within this District hold that "[a] plan of allocation need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel."  *In re Nexus 6P Prods. Liab. Litig.*, No. 17-CV-02185, 2019 WL 6622842, at *9 (N.D. Cal. Nov. 12, 2019) (citation omitted).  In light of the equitable treatment of Class Members and the competence of Class Counsel, the Court should find that the Plan of Allocation is also fair, reasonable, and adequate.

### C.  Final Judgment on the Investment Claims Should be Entered Under Rule 54(b)

Pursuant to Rule 54(b), a court may enter final judgment "as to one or more, but fewer than all, claims or parties if the court determines there is no just reason for delay."  *See* Fed. R. Civ. P. 54(b).  The Ninth Circuit has articulated a flexible and pragmatic approach to Rule 54(b) certification.  *See Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 797-98 (9th Cir. 1991).  A district court must first find that the judgment in question is a "final judgment" or "an ultimate disposition of an individual claim entered in the course of a multiple claims action."  *Wood v. GCC Bend, LLC*, 422 F.3d 873, 878 (9th Cir. 2005) (citing *Curtiss-Wright Corp. v. Gen. Elec. Co.*, 446 U.S. 1, 7 (1980)).

A district court must then, in its discretion, determine whether there is any just reason for delay under the equities of the case. *See id.*

"The determination regarding Rule 54(b)'s equitable analysis ordinarily 'is left to the sound judicial discretion of the district court to determine the 'appropriate time' when each final decision in a multiple claims action is ready for appeal.'" *Jewel v. Nat'l Sec. Agency*, 810 F.3d 622, 628 (9th Cir. 2015) (quoting *Wood*, 422 F.3d at 878). The relevant inquiry does not require the issues raised on appeal to be completely distinct from the rest of the action, "so long as resolving the claims would 'streamline the ensuing litigation.'" *Noel v. Hall*, 568 F.3d 743, 747 (9th Cir. 2009) (citation omitted). Of particular relevance, the Supreme Court and Ninth Circuit have both recognized that entry of a judgment under Rule 54(b) may be warranted under circumstances in which such a judgment would "facilitate a settlement of the remainder of the claims[.]" *Curtiss-Wright*, 446 U.S. at 8 n.2; *Alcan Aluminum Corp. v. Carlsberg Fin. Corp.*, 689 F.2d 815, 817 (9th Cir. 1982) (upholding Rule 54(b) certification where it could "facilitate settlement of the remaining claims").

The Supreme Court has endorsed certain factors as part of the equitable analysis to be applied to applications under Rule 54(b), including "whether the adjudicated claims [are] separable from the others and whether the nature of the claim [is] such that no appellate court [will] have to decide the same issues more than once." *Wood*, 422 F.3d at 878 n.2. Here, the Recordkeeping Claim is plainly separatable from the Investment Claim, as it was the subject of full discovery and was scheduled to be tried independently from the Investment Claim. Moreover, since the proposed final judgment under Rule 54(b) would be entered alongside an order preliminarily approving the Settlement, the Ninth Circuit would not be required to decide the same issues more than once, as any appeal from an order approving of the Settlement would ultimately concern whether the Settlement meets the standard for approval, whereas appeal of the proposed final judgment on the Investment Claim will concern whether Plaintiff's pleading of that claim meets applicable pleading standard in ERISA breach of fiduciary duty actions.

Final judgment should be entered on the Investment Claim.

## IV.   **CONCLUSION**

The Court should preliminarily approve the Settlement, Notice Plan, and Plan of Allocation, preliminarily certify the Settlement Class, and set a date for the Fairness Hearing.  In addition, the Court should enter final judgment on the Investment Claim.  A proposed Preliminary Approval Order and proposed Final Judgment are attached to the contemporaneously-filed Settlement Agreement.

Dated: November 21, 2023

Respectfully submitted,

/s/ *James C. Shah*
James C. Shah
Ronald S. Kravitz
MILLER SHAH LLP
456 Montgomery St, Suite 1900
San Francisco, CA 94104
(866) 540-5505
jcshah@millershah.com
rskravitz@millershah.com

James E. Miller
Laurie Rubinow
MILLER SHAH LLP
65 Main Street
Chester, CT 06412
(866) 540-5505
jemiller@millershah.com
lrubinow@millershah.com

Alec J. Berin
MILLER SHAH LLP
1845 Walnut Street, Suite 806
Philadelphia, PA 19103
(866) 540-5505
ajberin@millershah.com

Monique Olivier
OLIVIER & SCHREIBER LLP
475 14th Street, Suite 250
Oakland, CA 94612
(415) 484-0980
Monique@osclegal.com

*Attorneys for Plaintiff, the Plan,
and the Class*