MILLER SHAH LLP
JAMES C. SHAH (260435)
456 Montgomery St, Suite 1900
San Francisco, CA 94104
(866) 540-5505
jcshah@millershah.com

*Attorneys for Plaintiff, the Plan,
and the Settlement Class*

[Additional Counsel Listed on Signature Page]

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW WEHNER, Individually and as a representative of a class of similarly situated persons, on behalf of the U.S. ROCHE 401(K) SAVINGS PLAN,<br><br>Plaintiff,<br>v.<br><br>GENENTECH, INC. and the U.S. ROCHE DC FIDUCIARY COMMITTEE,<br><br>Defendants. | CASE NO. 3:20-cv-06894 RS<br><br>**NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD OF ATTORNEYS' EXPENSES AND CASE CONTRIBUTION AWARD; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Fairness Hearing: June 13, 2024 |

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO: 3:20-cv-06894 RS

TO:   THE COURT AND TO ALL COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Plaintiff, Matthew Wehner ("Plaintiff"), on behalf of the Settlement Class and the U.S. Roche 401(k) Savings Plan (the "Plan"), hereby moves the Court for an order granting this Unopposed Motion for Final Approval of Class Action Settlement and Award of Attorneys' Expenses and Class Contribution Award ("Motion") pursuant to the Court's Order Granting Preliminary Approval of Class Action Settlement, Preliminarily Certifying Class for Settlement Purposes, Approving Form and Manner of Settlement Notice, Preliminarily Approving Plan of Allocation, and Scheduling Fairness Hearing entered on January 12, 2024 ("Preliminary Approval Order").  *See* ECF No. 155.  Defendants, Genentech, Inc. and the U.S. Roche DC Fiduciary Committee (collectively, "Defendants," and with Plaintiff, the "Parties") do not oppose the Motion.

The Parties have worked cooperatively to effectuate the Notice Plan and Plaintiff submits the Court should enter an order granting Final Approval of the proposed Settlement as fair, reasonable, adequate, and in the best interests of the Settlement Class.  Plaintiff brings this Motion pursuant to Federal Rule of Civil Procedure 23(e), and it is supported by the below Memorandum of Points and Authorities; the Declaration of James C. Shah ("Shah Decl."); the Declaration of Cornelia Vieira of Strategic Claims Services ("SCS"), the Court-approved Settlement Administrator, Concerning the Mailing of the Settlement Notice and Former Participant Claim Form ("Vieira Decl.") and supporting exhibits; the pleadings, records, and papers on file in this action; and all other matter properly before this Court.

Plaintiff stands ready to provide any additional information or materials that the Court may require in connection with consideration of the Motion.

Dated: April 29, 2024                           Respectfully submitted,

/s/ *James C. Shah*
James C. Shah
MILLER SHAH LLP
456 Montgomery St, Suite 1900
San Francisco, CA 94104
(866) 540-5505
jcshah@millershah.com

# TABLE OF CONTENTS

I.   INTRODUCTION ............................................................................................................. 1

II.  BACKGROUND .............................................................................................................. 2

     A.  The Settlement ..................................................................................................... 3

          1.  The Settlement and Released Claims………………………………3

          2.  Distribution of Settlement Funds to Class Members……………….3

     B.  Preliminary Approval of Class Notice ............................................................. 4

     C.  The Settlement and Related Applications Have Been Reviewed and Authorized by an Independent Fiduciary on Behalf of the Plan .................................. 5

III. THE COURT SHOULD MAINTAIN CERTIFICATION OF THE SETTLEMENT CLASS AND GRANT FINAL APPROVAL OF THE SETTLEMENT .............................. 6

     A.  The Court Has Already Provisionally Certified the Settlement Class and Appointed Plaintiff's Counsel as Class Counsel ........................................................... 6

     B.  The Settlement is Fair, Reasonable, and Adequate......................................... 6

          1.  The Strength of Plaintiff's Case and the Risk, Expense, and Complexity of Further Litigation…………………………………7

          2.  The Settlement Recovery…………………………………………..8

          3.  The Stage of Proceedings and Extent of Discovery Completed……9

          4.  The Experience and Views of Class Counsel………………..…10

          5.  The Reaction of Class Members……………………….………11

     C.  Plaintiff's Request for Attorneys' Expenses and Case Contribution Award is Fair, Reasonable, and Appropriate............................................................................ 12

          1.  The Court Should Award the Requested Reasonable Expenses…12

          2.  The Court Should Award the Requested Case Contribution Award……………………………………………………………12

IV. CONCLUSION................................................................................................................. 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Campbell v. Facebook, Inc.*,
  951 F.3d 1106 (9th Cir. 2020) .................................................................................................. 7

*Churchill Village, L.L.C. v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) .................................................................................................. 11

*Cotter v. Lyft, Inc.*,
  193 F. Supp. 3d 1030 (N.D. Cal. 2016) ................................................................................. 6, 7

*Deaver v. Compass Bank*,
  2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) .......................................................................... 9

*Does I v. Gap, Inc.*,
  2002 WL 1000073 (D.N. Mar. Is. May 10, 2002) .................................................................. 10

*Fleming v. Impax Lab'ys Inc.*,
  2021 WL 5447008 (N.D. Cal. 2021) ........................................................................................ 9

*In re Lithium Ion Batteries Antitrust Litig.*,
  2017 WL 1086331 (N.D. Cal. Mar. 20, 2017) .......................................................................... 9

*In re MyFord Touch Consumer Litig.*,
  2019 WL 1411510 (N.D. Cal. 2019) ........................................................................................ 9

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................................... 9, 10, 11, 12

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) .................................................................................................. 12

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) .................................................................................................. 7

*Low v. Trump Univ., LLC*,
  246 F. Supp. 3d 1295 (S.D. Cal. 2017) .................................................................................. 13

*Ridgeway v. Wal-Mart Stores Inc.*,
 269 F. Supp. 3d 975 (N.D. Cal. 2017) .................................................................................. 13

*Rodriguez v. West Publishing Corp.*,
 563 F.3d 948 (9th Cir. 2009) ................................................................................................ 13

*Slezak v. City of Palo Alto*,
 2017 WL 2688224 (N.D. Cal. June 22, 2017) ....................................................................... 8

*Staton v. Boeing Co.*,
 327 F.3d 938 (9th Cir. 2003) .................................................................................................. 7

*Tadepalli v. Uber Techs., Inc.*,
 2015 WL 9196054 (N.D. Cal. Dec. 17, 2015) ........................................................................ 8

*Thieriot v. Celtic Ins.*,
 2011 WL 1522385 (N.D. Cal. Apr. 21, 2011) ...................................................................... 13

*Thomas v. MagnaChip Semiconductor Corp.*,
 2018 WL 2234598 (N.D. Cal. May 15, 2018) ...................................................................... 12

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
 2018 WL 3000490 (C.D. Cal. Feb. 6, 2018) .................................................................... 8, 10

*Viceral v. Mistras Grp., Inc.*,
 2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ........................................................................ 8

*Walsh v. CorePower Yoga LLC*,
 2017 WL 589199 (N.D. Cal. Feb. 14, 2017) ........................................................................ 10

**Statutes**

28 U.S.C. §§ 1332(d), 1453, and 1711-1715 ............................................................................... 5

28 U.S.C. §1453 ............................................................................................................................ 5

28 U.S.C. §§ 1711-1715 ............................................................................................................... 5

**Rules**

Federal Rules of Civil Procedure 23(a) and 23(b)(1) .................................................................. 6

Federal Rule of Civil Procedure 23(f) .......................................................................................... 7

Federal Rule of Civil Procedure 23(g) .......................................................................................... 6

Federal Rule of Civil Procedure 23(e)(2) ................................................................................. 6

**Regulations**

Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation" issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,632 ............................................................................................................................... 5

**MEMORANDUM OF POINT AND AUTHORITIES**

**I.     INTRODUCTION**

This unopposed Motion seeks final approval of a proposed Settlement in this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), as well as associated awards of Attorneys' Expenses and Class Contribution Award. The Settlement,[1] negotiated only weeks before a three-day bench trial was scheduled to begin, provides relief of $250,000.00[2] on Plaintiff's claim that Defendants caused the Plan to pay excessive recordkeeping and administrative fees ("Recordkeeping Claim") and maintains Plaintiff's right to appeal the investment claims that were previously dismissed. Notice has been distributed to the Settlement Class and there have been ***no objections*** to any aspect of the Settlement or the related applications to date. In addition, consistent with Department of Labor regulations pertaining to the release of claims by a qualified retirement plan, an independent fiduciary has been retained on behalf of the Plan to review and authorize the Settlement. The Independent Fiduciary's report, attached as Exhibit 1 to the Shah Declaration filed contemporaneously with this Motion, will provide an additional touchstone for the Court to assess the fairness and adequacy of the Settlement and the related application. Moreover, distribution of the Settlement Fund would largely occur by way of automatic distributions into the Plan, resulting in a significant participation rate among members of the Settlement Class. Based on the substantial relief provided by the Settlement relative to risks and costs of pursuing the Recordkeeping Claim at trial, Plaintiff and Class Counsel believe the Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

On January 12, 2024, the Court entered the Preliminary Approval Order, which preliminarily approved the Settlement Agreement (ECF No. 146-2) between Plaintiff and Defendants and conditionally certified the following class ("Settlement Class") for settlement purposes:

---

[1] The Settlement Agreement and its exhibits are attached to the Declaration of James C. Shah filed in support of Plaintiff's Notice of Motion and Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and Entry of Final Judgment Under Rule 54(b) as to Dismiss Claims ("Preliminary Approval Motion"). *See* ECF No. 146. Capitalized terms not otherwise defined herein shall have the same meaning as in the Settlement Agreement.

[2] Defendants have also agreed to pay one half of the administrative costs associated with the Settlement, up to a total of $50,000.

> All persons who participated in the Plan at any time during the Class Period, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period.
> The Class Period is October 20, 2014 through the date the Preliminary Approval Order, and the Class excludes all Defendants, including the individual members of the Committee during the Class Period, and their Beneficiaries.

In addition to conditionally certifying the Class, the Court determined that the Agreement—a hard-fought compromise resulting from adversarial, arm's length negotiations—was sufficiently fair, reasonable, and adequate to warrant provisional approval. To date, there have been no objections to any aspect of the Settlement Agreement or related applications following notice to the Settlement Class, and the terms of the Agreement have been reviewed and authorized by the Independent Fiduciary in an opinion and report that will be filed contemporaneously with this Motion. *See* Shah Decl., at ¶¶ 2, 11. In light of the substantial benefits made available by the Agreement, which a significant percentage of Settlement Class members will receive without the need to file a claim, and in order to avoid the burden, expense, inconvenience, and uncertainty of continued litigation, Plaintiff and Defendants now request that the Court grant final approval of the Settlement. Further, Class Counsel and Plaintiff have spent considerable time, resources, and effort to the litigation of this action, with no guarantee of recovery. Thus, Plaintiff submits that the Attorneys' Expenses and Class Contribution Award in the amounts requested are appropriate in recognition of the efforts of Class Counsel and Plaintiff in pursuing the Plan's claims.

## II.   BACKGROUND

The basic facts and procedural history of this action are well-known to this Court and set forth in greater detail in the Court's Preliminary Approval Order and the briefing that preceded that Order. *See* ECF No. 155. The Settlement Agreement was reached after extensive motion practice, complete discovery, significant preparation for the bench trial scheduled to begin in October 2023, and negotiations between experienced and informed counsel under the auspices of a well-respected neutral mediator, Robert A. Meyer, Esquire, of JAMS. *See* Shah Decl., at ¶ 4. As a result, Plaintiff and Class Counsel believe this Agreement to be fair, adequate, and reasonable and submit that it is in the best interests of the Class.

**A.     The Settlement**

**1.     The Settlement and Released Claims**

If the Court grants Final Approval of the Settlement, the Settlement Class will be deemed to have released Defendants from all claims described in Section 1.42 of the Settlement Agreement, which is incorporated herein by reference. *See* Settlement Agreement, at Section 1. In general terms, these claims include the Recordkeeping Claim and related derivative claims. The Settlement would specifically preserve for appeal the Investment Claim and its derivative claims— indeed, Plaintiff has initiated this appeal. *See* ECF No. 169 (Notice of Appeal).

In exchange for resolving the Recordkeeping Claim, Defendants have agreed to establish a common fund in the amount of $250,000 to benefit participants and beneficiaries in the Plan during the Class Period. Consistent with the Preliminary Approval Order and Notice provided to the Class, the Settlement Fund will be used to pay the following amounts associated with the Settlement: (1) compensation to current and authorized former participants of the Plan as described in Section 5.2–5.3 of the Agreement; (2) approved litigation expenses necessarily incurred by Class Counsel not to exceed $5,000; (3) all costs arising from evaluation of the settlement by the Independent Fiduciary as described in Section 5.1.3 of the Agreement; (4) costs of Settlement Administration other than the portion that Defendants will offset pursuant to the Settlement Agreement; and (5) payment of a Case Contribution Award to Plaintiff not to exceed $5,000, subject to Court approval. *See* Settlement Agreement, at Section 5.

**2.     Distribution of Settlement Funds to Class Members**

The amount paid to each Class Member will be determined by the proposed Plan of Allocation that is based on the actual fees paid by each Class Member during the Class Period. *See* Settlement Agreement, Ex. B (Plan of Allocation). Participants, and Beneficiaries and Alternate Payees with Active Accounts in the Plan do not need to do anything affirmatively to receive payment under the Settlement, as their accounts will automatically be credited the amount due to them under the Settlement. As for Authorized Former Participants, and Beneficiaries and Alternate Payees who no longer have Active Accounts, these individuals need only submit a Former Participant Claim Form to be eligible for payment under the Settlement, which, at their

election, will be made either by check or rollover to an individual retirement account or other eligible employer plan. *See id*.

### B. Preliminary Approval of Class Notice

On January 12, 2024, the Court granted preliminary approval of the proposed Settlement Agreement and approved the Notice Plan. *See generally* Preliminary Approval Order. In compliance with the Preliminary Approval Order, SCS disseminated the Settlement Notice via electronic and/or first-class mail to approximately 55,000 possible members of the Settlement Class and the Former Participant Claim Form to Class Members without an Active Account. *See* Vieira Decl., at ¶ 5. Specifically, SCS provided the Court-approved Notice to more than 5,000 individuals via first-class mail and just under 50,000 individuals via electronic mail. *Id*. Where emails were returned to SCS as undeliverable, SCS followed up with a notice mailing via first-class mail. *See id.*, at ¶¶ 6–7. SCS obtained forwarding addresses and updated contact information through the United States Post Office and "skip-tracing." *Id*. SCS re-mailed Notices to each individual for whom an updated address was discovered after the original Notice had been returned. *Id*. Additionally, pursuant to the Preliminary Approval Order, SCS mailed reminder postcards to Class Members who do not have Active Plan Accounts and had not yet submitted a Former Participant Class Form as of March 27, 2024. *See id.*; Preliminary Approval Order, at 8–9.

Pursuant to the terms of the Settlement Agreement, SCS also established a website for the Settlement (http://www.strategicclaims.net/genentech401k/), which provided information about the case and relevant deadlines and also made available a number of pertinent documents, including the following: (i) Notice, (ii) Former Participant Claim Form, (iii) the Preliminary Approval Order, (iv) the Settlement Agreement including Exhibits, and (v) the Amended Class Action Complaint. *See* Vieira Decl., at ¶ 10. Furthermore, in accordance with the Settlement Agreement and the Preliminary Approval Order, SCS established a toll-free telephone number, to which Class Members could direct questions about the Settlement. *Id*. at ¶ 11. In addition to the foregoing, notice of the Settlement has been distributed to the appropriate federal and state officials pursuant to the Class Action Fairness Act of 2005. *See* Shah Decl., at ¶ 20; *see also* 28 U.S.C. §§

1332(d), 1453, and 1711-1715. SCS provided periodic updates to counsel of expenditures made in connection with administration of the Settlement, and it has provided any and all information that was requested by the Parties or their counsel. *See* Shah Decl., at ¶ 21.

Finally, neither Class Counsel nor SCS have received any objections to the fairness, reasonableness, or adequacy of the Settlement, any terms therein, or to the proposed Administrative Expenses, Attorneys' Expenses, or Case Contribution Awards. *See* Vieira Decl., at ¶ 14; Shah Decl., at ¶ 11. Similarly, no objections have been filed on the docket.

### C. The Settlement and Related Applications Have Been Reviewed and Authorized by an Independent Fiduciary on Behalf of the Plan

Consistent with Department of Labor guidance and providing further confirmation that the Settlement Agreement is fair, reasonable, and adequate, Defendants retained an Independent Fiduciary, Fiduciary Counselors, Inc., to approve and authorize the Settlement on behalf of the Plan and Class Members. *See* Settlement Agreement, at Section 2.1; *see also* Shah Decl., at ¶ 2. All Parties and their counsel provided the Independent Fiduciary with sufficient information so that the Independent Fiduciary could review and evaluate the Settlement, including the relevant pleadings and papers filed on the docket, certain discovery materials, confidential settlement documents, and any other materials requested. *See* Shah Decl., at ¶ 2. In addition, the Independent Fiduciary conducted separate interviews with Class Counsel and counsel for Defendants to discuss the Parties' claims and defenses, the Parties' process in negotiating the Settlement, and the terms of the Settlement relative to the released claims and potential outcomes of the litigation. The Independent Fiduciary complied with all relevant conditions set forth in Prohibited Transaction Class Exemption 2003-39, "Release of Claims and Extensions of Credit in Connection with Litigation," issued December 31, 2003, by the United States Department of Labor, 68 Fed. Reg. 75,632, as amended ("PTE 2003-39"), in making its determination, for the purpose of Defendants' reliance on PTE 2003-39. *See id.*, Ex. 1, at 8–1. As reflected in the Report of the Independent Fiduciary, the Settlement and each of the related applications are fair and adequate in all respects. *See id.*

## III. THE COURT SHOULD MAINTAIN CERTIFICATION OF THE SETTLEMENT CLASS AND GRANT FINAL APPROVAL OF THE SETTLEMENT

### A. The Court Has Already Provisionally Certified the Settlement Class and Appointed Plaintiff's Counsel as Class Counsel

The Court previously certified the Settlement Class upon findings that each of the requirements of Rule 23(a) and 23(b)(1) are met, pursuant to the Joint Stipulation and Order Regarding Class Certification (ECF No. 98), and maintained provisional certification of the Settlement Class in the Preliminary Approval Order. *See* ECF No. 155, at 4. In its January 12, 2024 Order, the Court also appointed Plaintiff as Class Representative and Miller Shah LLP and Olivier & Schreiber LLP as Class Counsel pursuant to Federal Rule of Civil Procedure 23(g). *See id*. For the reasons identified in the Court's Preliminary Approval Order and in Plaintiff's Unopposed Motion for Preliminary Approval, the above-defined Settlement Class meets the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(1). None of the circumstances that warranted provisional certification have changed; in fact, the circumstances of a settlement provide even greater support for class certification. This is because Plaintiff asserts claims on behalf of the Plan, participants and beneficiaries have uniform theories of liability and relief, and the structure of ERISA requires that participants and beneficiaries bringing actions for breach of fiduciary duty must do so on behalf of a plan as a whole. Moreover, the Settlement would provide relief to the Plan as a whole, which would then be distributed to individual participant accounts pursuant to the Plan of Allocation. Thus, the Settlement Class should be maintained through entry of a final judgment with respect to the Recordkeeping Claim.

### B. The Settlement is Fair, Reasonable, and Adequate

"The standard for reviewing class action settlements at the final approval stage is well-settled. Rules 23(e)(2) states that the district court may only approve the settlement if 'it is fair, reasonable, and adequate.'" *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1035 (N.D. Cal. 2016) (citing Fed. R. Civ. P. 23). In determining whether a settlement meets these requirements, courts look to factors including the following:

(1) the strength of plaintiffs' case;

      (2) the risk, expense, complexity, and likely duration of further litigation;

      (3) the risk of maintaining class action status throughout the trial;

      (4) the amount offered in settlement;

      (5) the extent of discovery completed, and the stage of proceedings;

      (6) the experience and views of counsel;

      (7) the presence of a governmental participant; and

      (8) the reaction of the class members to the proposed settlement.

*Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citation and internal quotation marks omitted). The relative importance of these factors depends upon the unique facts and circumstances of a given case, and "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness . . . ." *Cotter*, 193 F. Supp. 3d at 1035 (citations and alterations omitted). "[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *see also Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (same).

      Just as the Court has already provisionally certified the Settlement Class, it has also preliminarily found that the Agreement is "fair, reasonable, and adequate." ECF No. 155, at 3. Indeed, the factors considered at final approval mirror those contemplated at preliminary approval. Having already preliminarily approved the fairness of the settlement, and because there have been no intervening circumstances that would alter that conclusion, the Court should find the same here as Notice has been completed in accordance with the Court's Preliminary Approval Order and all of the relevant factors support final approval of the Settlement. *See Cotter*, 193 F. Supp. 3d at 1036–37 (recognizing that a Court's inquiry at final approval is equally careful as the preliminary approval analysis).

      **1.**      **The Strength of Plaintiff's Case and the Risk, Expense, and Complexity of Further Litigation**

      Although Plaintiff believes there is strong legal and factual support for the Recordkeeping Claim, there is inherent risk in continued litigation of this claim. When the Parties negotiated the

Settlement, they had engaged in vigorous litigation and significant motion practice, including filing dispositive and expert exclusion motions, and were preparing for a three-day bench trial scheduled to begin in October 2023. Trial presentations would rely heavily on competing expert testimony and likely given way to a complex appeal. Accordingly, the Settlement is a product of an extensive arm's-length process in recognition of these risks. *See Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, 2018 WL 3000490, at *4 (C.D. Cal. Feb. 6, 2018). "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Viceral v. Mistras Grp., Inc.*, 2016 WL 5907869, at *8 (N.D. Cal. Oct. 11, 2016); *see also Slezak v. City of Palo Alto*, 2017 WL 2688224, at *5 (N.D. Cal. June 22, 2017) (finding the "likelihood of fraud or collusion [wa]s low . . . because the Settlement was reached through arm's-length negotiations, facilitated by an impartial mediator.").

Further, Class Counsel and Defendants' counsel are experienced in ERISA litigation, and each possess a thorough understanding of the factual and legal issues involved in the Action. *See Tadepalli v. Uber Techs., Inc.*, 2015 WL 9196054, at *9 (N.D. Cal. Dec. 17, 2015) ("Settlements are entitled to 'an initial presumption of fairness' because they are the result of arm's-length negotiations among experienced counsel."). Indeed, prior to reaching agreement on the Settlement, the Parties had negotiated factual stipulations and identified witnesses and exhibits for trial, providing the Parties significant ability to evaluate the strength of their respective claims and defenses. As described in more detail below, Plaintiff and Class Counsel had sufficient information to evaluate the strength of Plaintiff's case and the risk, expense, and complexity of further litigation.

### 2. The Settlement Recovery

Plaintiff's experts have estimated the average range of realistic and supportable damages to be from $208,993 to $1,007,000. *See* Shah Decl., at ¶ 19. Numbers on the higher end of this range *assume proof of complete liability*, which faced challenges given certain unique features of Defendants' process for monitoring the Plan's recordkeeping fees, and application of the most aggressive interest rates identified by Plaintiff's experts. *See id.* While figures in this range are defensible, the likelihood of establishing the higher figure faces more challenges than the lower

figure. Indeed, if the Action proceeded through trial, Defendants would have challenged the loss calculation methodology and interest rates applied (not to mention challenges to causation and other elements of Plaintiff's claims).

The Settlement recovery represents approximately 120% of the losses associated with Defendants' alleged failure to renegotiate the Plan's recordkeeping contract in advance of its expiration in 2020, the aspect of the Recordkeeping Claim about which Plaintiff believes he was most likely to prevail at trial. *See id.* The Settlement recovery likewise represents over 34% of the midpoint of realistically recoverable damages. *See id.* Even under less conservative assumptions, the Settlement recovery is favorable, as it represents roughly 15% of the total maximum damages amount associated with the Recordkeeping Claim according to Plaintiff's expert as modified by the sensitivity analysis asserted by Defendants' expert. Thus, the Settlement is well within the accepted range of recovery in class action settlements across the country and in this district. *See id.*; *see also Fleming v. Impax Lab'ys Inc.*, 2021 WL 5447008, at *10 (N.D. Cal. 2021) (settlement recovery representing 12.5% of total recoverable damages is "in a range consistent with the median settlement recovery in class actions"); *In re MyFord Touch Consumer Litig.*, 2019 WL 1411510, at *10 (N.D. Cal. 2019) (approving settlement providing for 5.7% of total possible recovery); *Deaver v. Compass Bank*, 2015 WL 8526982, at *7 (N.D. Cal. Dec. 11, 2015) (10.7% of total damages); *In re Lithium Ion Batteries Antitrust Litig.*, 2017 WL 1086331, at *4 (N.D. Cal. Mar. 20, 2017) (overruling objections to settlement amount representing between 2.2% and 11.2% of total possible damages).

### 3. The Stage of Proceedings and Extent of Discovery Completed

"The extent of the discovery conducted to date and the stage of the litigation are both indicators of [Class Counsel's] familiar with the case and of Plaintiffs having enough information to make informed decisions." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008). The Parties were engaged in vigorous litigation and trial preparation when they agreed to the Settlement and further litigation promised to be similarly lengthy and complex, involving numerous competing experts on liability issues concerning Plaintiff's claims and Defendants' defenses as well as the Plan's alleged losses. *See supra* II.A.1. Class Counsel conducted

substantial investigation and analysis of thousands of pages of documents, depositions of fact witnesses, expert disclosures and depositions of expert witnesses, and disclosures in connection with preparation for trial. *See* Shah Decl., at ¶¶ 5, 9. "Discovery can be both formal and informal" and, here, Plaintiff and Class Counsel engaged in significant investigation of the Parties' claims and defenses even before filing the initial complaint, and since then have undertaken significant formal fact and expert discovery. *See Urakhchin*, 2018 WL 3000490, at *4. Moreover, because the Parties had engaged in trial preparation including the negotiation of factual stipulations and disclosure of witnesses and evidence to be presented at trial, Class Counsel and counsel for Defendants were well informed regarding the evidence that the Parties intended to offer at trial in support of their respective claims and defenses.

### 4. The Experience and Views of Class Counsel

Class Counsel has significant experience in class action litigation generally and ERISA breach of fiduciary duty litigation in particular, and are of the opinion that the Settlement is fair and reasonable. "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Omnivision*, 559 F. Supp. 2d at 1043. This presumption is especially warranted based on the opinion of "experienced plaintiffs' advocates and class action lawyers." *Does I v. Gap, Inc.*, 2002 WL 1000073, at *13 (D.N. Mar. Is. May 10, 2002); *Walsh v. CorePower Yoga LLC*, 2017 WL 589199, at *10 (N.D. Cal. Feb. 14, 2017) (holding experience of counsel favored settlement approval.). Class Counsel have analyzed the Recordkeeping Claim and defenses at issue, as well as the Plan's potential associated losses, and are of the opinion that the Settlement represents a favorable compromise in the face of meaningful litigation risk. Further, the Parties have submitted the Settlement and all related applications to the Independent Fiduciary, which has found that the applications are reasonable, providing an additional touchstone beyond the opinion and experience of Class Counsel. *See Urakhchin*, 2018 WL 3000490, at *5 (finding independent fiduciary approval supports granting applications for attorneys' fees, expenses, and case contribution awards). The Parties have also relied on the knowledge and experience of experts in judging the fairness of this Agreement. *See* Shah Decl., at ¶ 9.

In sum, the Settlement is the product of vigorous litigation and arm's-length negotiation by

experienced and well-informed counsel, adequately reflects the strength of the parties' claims and defenses, is based on sufficient discovery and information, and provides significant relief to the Settlement Class. Accordingly, the Court should find the Settlement is fair, reasonable, and adequate, and merits preliminary approval.

### 5. The Reaction of Class Members

The reaction of the Settlement Class to the Settlement strongly supports final approval of the Settlement. Indeed, "[a] small number of objections at the time of the fairness hearing may raise a presumption that the settlement is favorable to the class." *Omnivision*, 559 F. Supp. 2d at 1043 (approving settlement where three of over 57,000 potential class members objected); *see Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 45 objections out of 90,000 notices sent). Notice of the Settlement with specific information about its material terms, as well as each of the associated applications, has been distributed to approximately 55,000 potential Settlement Class members and ***zero objections*** have been filed to date. *See supra* II.B. The Notice included details regarding the anticipated applications for payment of litigation expenses of no more than $5,000 and a Case Contribution Award in the amount of $5,000 to Plaintiff and, likewise, no objections have been made to these applications. The terms of the Settlement Agreement and related applications have been reviewed and authorized by the Independent Fiduciary, who took into account the reaction of the Settlement Class. *See id.*

Furthermore, nearly 38,000 members of the Settlement Class will receive the share of Settlement proceeds to which they are entitled automatically as deposits into their active accounts in the Plan. *See* Vieira Decl., at ¶ 15. In addition, over 1,300 members of the Settlement Class who do not have active accounts have submitted Former Participant Claim Forms and will receive the share of Settlement proceeds to which they are entitled by check or rollover to another qualifying retirement plan, depending upon their election. *See id.* The lack of objections combined with this substantial participation rate in the Settlement support a finding that the reaction of the Settlement Class favors final approval.

### C. Plaintiff's Request for Attorneys' Expenses and Case Contribution Award is Fair, Reasonable, and Appropriate

#### 1. The Court Should Award the Requested Reasonable Expenses

"Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *Omnivision*, 559 F.2d at 1048.  Such costs typically include "photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses." *Thomas v. MagnaChip Semiconductor Corp.*, 2018 WL 2234598, at *4 (N.D. Cal. May 15, 2018).[3]  Class Counsel has prosecuted the Class Action on a contingent basis and advanced all reasonable associated costs with no expectation of recovery in the event the litigation did not result in a recovery for the Settlement Class.  *See* Settlement Agreement, at Section 6.1.  The expenses incurred by Class Counsel were necessary for the effective litigation of this Action.  For example, proof of Plaintiff's Recordkeeping Claim required document and deposition discovery to be taken from Defendants and the retention of an expert to testify about the standard of care as it relates to monitoring recordkeeping expenses and the reasonable fee amount for the recordkeeping services obtained by the Plan.  The actual expenses incurred by Class Counsel far exceed the $5,000 capped request, which Class Counsel has limited in an effort to provide a greater amount of relief to the Plan.

Further, Class Counsel are not requesting attorneys' fees and are capping the requested expenses at $5,000, despite the considerable effort and risk taken to litigate this matter and achieve an exemplary result for the Settlement Class.  *See* Shah Decl., at ¶¶ 12–14, 17–18.  Plaintiff submits that the requested award of expenses is warranted under all of the circumstances.

#### 2. The Court Should Award the Requested Case Contribution Award

Class Contribution "awards that are intended to compensate class Representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (citation omitted).  Such awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial

---

[3] Plaintiff notes that Class Counsel likewise does not seek reimbursement of any travel expenses incurred in connection with its representation of the Settlement Class, despite actually incurring such expenses in the course of this litigation.

or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958–59 (9th Cir. 2009).

Plaintiff has actively participated in the litigation and assisted Class Counsel in drafting the respective complaints and other documents, consulted with Class Counsel as needed, answered discovery-related requests for information, sat for a deposition, and participated in settlement and strategy discussions. *See* Shah Decl., at ¶ 10. In addition, Plaintiff was prepared to attend the trial originally scheduled to begin on October 30, 2023. *See id.* Consistent with awards regularly granted under similar circumstances, Plaintiff believes that he should be compensated for his work done in support of the litigation and for assisting Class Counsel in achieving a strong settlement on behalf of the Class, as well as the reputational and other risks he undertook in bringing this Action.

Accordingly, Plaintiff requests that the Court approve a contribution award in the amount of $5,000. This sum represents a modest amount of the Settlement Fund. Payment of this award is certainly warranted. *See Thieriot v. Celtic Ins.*, 2011 WL 1522385, at *7–8 (N.D. Cal. Apr. 21, 2011) (approving service awards of 1.8% of gross settlement fund); *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 1002 (N.D. Cal. 2017) (awarding $15,000 for each of 9 plaintiffs, which combined for 0.22% of $60 million settlement); *Low v. Trump Univ.*, LLC, 246 F. Supp. 3d 1295, 1299 (S.D. Cal. 2017) (awarding $15,000 for each of 5 plaintiffs, which combined for 0.3% of $25 million settlement).

In sum, and for all the reasons outlined above, Class Counsel respectfully submits that awards of the requested Expenses and Case Contribution Award are warranted.

## IV.   CONCLUSION

For the foregoing reasons, those already identified in Plaintiff's Unopposed Motion for Preliminary Approval and the Court's Preliminary Approval Order, and all others appearing on the record, Plaintiff respectfully requests that the Court grant Plaintiff's Unopposed Motion for Final Approval of the Settlement, Attorneys' Expenses, and Class Contribution Award.[4]

---

[4] A proposed Final Approval Order was filed as an exhibit to the Settlement Agreement with the

| | |
|---|---|
| Dated: April 29, 2024 | Respectfully submitted, |
| | /s/ *James C. Shah* |
| | James C. Shah |
| | Ronald S. Kravitz |
| | MILLER SHAH LLP |
| | 456 Montgomery St, Suite 1900 |
| | San Francisco, CA 94104 |
| | (866) 540-5505 |
| | jcshah@millershah.com |
| | rskravitz@millershah.com |
| | |
| | James E. Miller |
| | Laurie Rubinow |
| | MILLER SHAH LLP |
| | 65 Main Street |
| | Chester, CT 06412 |
| | (866) 540-5505 |
| | jemiller@millershah.com |
| | lrubinow@millershah.com |
| | |
| | Alec J. Berin |
| | MILLER SHAH LLP |
| | 1845 Walnut Street, Suite 806 |
| | Philadelphia, PA 19103 |
| | (866) 540-5505 |
| | ajberin@millershah.com |
| | |
| | Monique Olivier |
| | OLIVIER & SCHREIBER LLP |
| | 475 14th Street, Suite 250 |
| | Oakland, CA 94612 |
| | (415) 484-0980 |
| | Monique@osclegal.com |
| | |
| | *Attorneys for Plaintiff, the Plan, and the Settlement Class* |

---

Preliminary Approval Motion. *See* Settlement Agreement, Ex. D (Proposed Final Approval Order). If helpful to the Court, Plaintiff would be pleased to provide a Word version of the proposed Final Approval Order.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT            -14-
CASE NO: 3:20-cv-06894 RS